**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Bobby BENNETT, Jr., Defendant–Appellant.**

No. 97–5901.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 6, 1998.

Decided March 23, 1999.

---

Terry M. Cushing, Asst. U.S. Attorney (briefed), Alexander T. Taft, Jr., Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney, Louisville, KY, for Plaintiff–Appellee.

Scott C. Cox (argued and briefed), Louisville, KY, for Defendant–Appellant.

Before: KEITH, KENNEDY, and NORRIS, Circuit Judges.

## OPINION

KEITH, Circuit Judge.

The defendant, Bobby Bennett, Jr., challenges his conviction for various drug related offenses. For the reasons detailed below, the judgment and sentence entered by the district court are **AFFIRMED**.

### I.

In July of 1995, a confidential informant ("CI") informed the Kentucky State Police that the defendant, Bobby Bennett, Jr., sold marijuana and other narcotics from his home. The CI was instructed by the police department to purchase any drugs the defendant might offer for sale. In mid-July, the CI purchased one pound of marijuana and 1.56 grams of methamphetamine from Bennett at Bennett's residence. At the end of July, the CI purchased another 2.47 grams of methamphetamine from the defendant. At that meeting, Bennett also discussed buying 25 pounds of marijuana from the CI at some point in the near future. A few days later, the CI and Bennett met at Bennett's home to finalize the purchase plans for the 25 pounds of marijuana.

As arranged, the defendant and the CI met in the parking lot of a shopping mall on August 4, 1995. Bennett approached the vehicle in which the CI and an undercover Kentucky State Police Officer were sitting. Bennett examined a package, which he was told contained the 25 pounds of marijuana he was interested in purchasing. After the defendant viewed the package, he was arrested on state charges.

On June 3, 1996, nearly one year after his arrest on state charges, the defendant's case was presented to a federal grand jury. The grand jury returned a six count indictment, charging the defendant with: Count 1, distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1); Count 2, distribution of marijuana in violation of 21 U.S.C. § 841(a)(1); Count 3, distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1); Count 4, attempt to possess marijuana with intent to distribute in violation of 21 U.S.C. § 846; Count 5, possession of marijuana with intent to distribute in vio-lation of 21 U.S.C. § 841(a)(1); and Count 6, carrying a firearm in relation to the attempted possession of marijuana in violation of 18 U.S.C. § 924(c).

On June 6, 1996, Bennett was arraigned and pled not guilty to each of the six federal counts pending against him. The defendant's jury trial commenced on March, 18, 1997. The jury returned guilty verdicts for Counts 1–5, but Bennett was acquitted of Count 6. On June 23, 1997, the district court sentenced Bennett to 33 months imprisonment, three years of supervised release and a special penalty assessment. On July 3, 1997, the defendant filed a timely notice of appeal.

### II.

Bennett first questions the validity of a search warrant issued which authorized a search of his residence. That warrant was issued by Pat Goad, the Circuit Court Clerk for Warren County, Kentucky. Several weeks prior to the issuance of the warrant, Ms. Goad was informed that all of the judges for Warren County would be absent from the county and that she would be responsible for signing all search warrants. Ms. Goad contacted the court's legal counsel to confirm that she possessed the authority to sign search warrants in this situation. Ms. Goad was advised that under Kentucky statutory law, she, as the Circuit Court Clerk, was authorized to sign search warrants when all of the judges were absent from Warren County.

After the defendant's arrest, a detective from the Kentucky State Police Department and the Commonwealth Attorney for Warren County went to Ms. Goad's office to obtain the search warrant at issue. They presented Ms. Goad with a search warrant, an affidavit in support thereof, and a certification that all judges were absent from the county. Ms. Goad read both the search warrant and the affidavit. She found that there was sufficient probable cause for the warrant to issue and she signed the warrant.

In a nutshell, Bennett argues that while allowing Ms. Goad to issue a search warrant in the absence of Warren County judges might comport with Kentucky state

law, it did not satisfy the warrant requirements imposed by federal law pursuant to Rule 41(a) of the Federal Rules of Criminal Procedure. Thus, he argues, the search warrant was defective for federal purposes and the evidence seized was improperly admitted at his federal trial. We reject this argument.

■ When reviewing a district court's denial of a motion to suppress evidence, the district court's factual findings are examined simply for clear error, but its conclusions of law are subject to de novo review. *United States v. Jenkins,* 124 F.3d 768, 771–72 (6th Cir.1997). The evidence is reviewed in a light most favorable to the district court's conclusions. *Id.* at 772.

As a matter of law, the district court concluded that since federal officers were not involved in obtaining the search warrant, Rule 41(a), by its own terms, does not apply to this case. Rule 41(a) states, in its entirety:

> Upon the request of a federal law enforcement officer or an attorney for the government, a search warrant authorized by this rule may be issued (1) by a federal magistrate judge, or a state court of record within the federal district, for a search of property or for a person within the district and (2) by a federal magistrate judge for a search of property or for a person either within or outside the district if the property or person is within the district when the warrant is sought but might move outside the district before the warrant is executed.

The defendant's entire argument is that this Circuit has long held that federal law, not state law, governs the validity of a search warrant in a federal criminal proceeding. *See United States v. Shields,* 978 F.2d 943, 945 (6th Cir.1992) (citing *United States v. Allen,* 954 F.2d 1160, 1167 (6th Cir.1992); *United States v. Smith,* 966 F.2d 1045, 1049 (6th Cir.1992); *United States v. Combs,* 672 F.2d 574, 578 (6th Cir.), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982)). On that basis alone, he reasons that the search warrant involved in his federal prosecution must comport with the Federal Rules of Criminal Procedure, namely Rule 41(a). He argues that while under Kentucky law Ms. Goad, a Circuit Court Clerk, may be

authorized to issue a search warrant, Rule 41(a) confers such authority only upon federal and state judges.

Indeed, we acknowledge the longstanding precept that federal law governs federal proceedings, and we continue to support it. What the defendant fails to realize, however, is that simply because federal law governs the validity of a search in a federal prosecution, it does not automatically follow that Rule 41(a) applies to the search in question.

An objective review of Rule 41(a) reveals that the Rule concerns itself only with search warrants requested by "a federal law enforcement officer or an attorney for the government...." As we have unequivocally stated, "by its terms Rule 41 does not apply in a case where no federal officers are involved." *United States v. Shields,* 978 F.2d 943, 946 (6th Cir.1992). In *Shields,* it was questioned whether evidence should be suppressed for failing to comply with Rule 41(c). *Id.* at 945. We affirmed the denial of the defendant's motion to suppress, finding that Rule 41(c) was not implicated because no federal officers were involved in that investigation. *Id.* at 946–47. We further noted that the validity of a search warrant obtained by state officers for seizure of evidence ultimately used in a federal prosecution turns only on constitutional issues. *Id.* at 946 n. 5. Where, however, the warrant is a federal warrant obtained by federal officers for use in a federal prosecution, the inquiry is not confined to constitutional matters, but must take into consideration Rule 41. *Id.*

Similarly, in *United States v. Searp,* 586 F.2d 1117 (6th Cir.1978), *cert. denied,* 440 U.S. 921, 99 S.Ct. 1247, 59 L.Ed.2d 474 (1979), we confronted the issue of whether evidence seized in conformity with state law, but in violation of federal requirements, was admissible in federal court. In that case, federal and state law enforcement officers participated in a joint investigation of Jerry Searp. *Id.* at 1119. A warrant was issued by a Kentucky state judge, authorizing a search of the home of Searp's mother. *Id.* That warrant was served in a manner which complied with state law, but did not satisfy requirements outlined by Rule 41(c). *Id.* We

held that "federal officers, investigating a federal crime, must comply with the federal rules governing their conduct ... when a federal officer has participated in a search in an official capacity, his or her conduct, and thus the legality of the search, is to be judged by federal standards." *Id.* at 1121. By way of background, we acknowledged that as state search and seizure standards are, in some respects, more lenient than federal procedures, federal officers might be tempted to take advantage of that flexibility. *Id.* at 1119–21. We explained that the "participation doctrine" was developed to discourage attempts to evade the Fourth Amendment, by establishing that if federal officers participated in the search, the search was to conform with federal procedures. *Id.* at 1120.[1]

As we turn to the facts of the instant matter, it is clear that the case before us poses no reason to fear that federal officers were in danger of circumventing any Fourth Amendment guarantees or of running afoul of the participation doctrine. In that respect, the instant matter is more like *Shields,* where no federal officers were involved with obtaining the warrant, and less like *Searp.* Unlike *Searp,* the investigation of Bennett involved no federal law enforcement officers. No federal agents were involved with Bennett's surveillance, arrest or the search of his home. This was exclusively a state investigation and a state warrant was issued. In fact, it was not until eleven months after Bennett's arrest on state charges, that any charges were presented to a federal grand jury and the defendant was put in jeopardy of a federal prosecution. Thus, after a de novo review, we agree with the district court's determination that Rule 41, by its own terms, does not apply herein. Rather, the validity of the search warrant in this case must be tested pursuant to Kentucky criminal procedural requirements and the Constitution.

The relevant Kentucky statute provides:

In the event of the absence from a county of all District Judges and all Circuit Judges and all trial commissioners, the circuit [court] clerk in each county may issue criminal warrants prepared by the Commonwealth's attorney or county attorney, who shall certify that there is no District Judge, Circuit Judge, or trial commissioner within the county.

Ky.Rev.Stat. 15.725(5).

The record clearly demonstrates that the issuance of the search warrant conformed to Kentucky's procedural requirements. Warren County does not have trial commissioners. All of the judges in Warren County were absent from the county. The Commonwealth Attorney prepared the search warrant and the affidavit in support thereof, attaching, as required, a certification that all judges were absent from the county. Thus, Ms. Goad, the Circuit Court Clerk of the county,

---

**1.** Other decisions handed down by this Court have applied federal procedural requirements only where federal law enforcement was involved in the search. *See, e.g., United States v. Allard,* 47 F.3d 1170, 1995 WL 6240, at *2 (6th Cir.) (unpublished table decision), *cert. denied,* 514 U.S. 1111, 115 S.Ct. 1965, 131 L.Ed.2d 855 (1995) (explaining that "the district court was not required to apply the requirements of Rule 41 in analyzing a search warrant requested and executed by state officers and issued by a state magistrate."); *United States v. Finch,* 998 F.2d 349, 351 (6th Cir.1993) (noting that where a search was conducted by a state officer pursuant to a state warrant, the warrant was only required to pass constitutional muster and was not required to satisfy Rule 41(a)); *United States v. Twenty–Two Thousand, Two Hundred Eighty Seven Dollars ($22,287.00), United States Currency,* 709 F.2d 442, 447 (6th Cir.1983) (finding that Rule 41(c)(1) did apply where a warrant and affidavit were sworn out on state forms and

obtained by a state police officer, but a federal agent was involved in the investigation and participated in the search).

We also note that several of our sister circuits have made similar rulings. *See, e.g., United States v. McKeever,* 905 F.2d 829, 833 (5th Cir. 1990), *cert. denied,* 498 U.S. 1070, 111 S.Ct. 790, 112 L.Ed.2d 852 (1991) (holding that "the most feasible interpretation of Rule 41(a) is that Rule 41 only applies to warrants issued at the request of a federal officer."); *United States v. Mitro,* 880 F.2d 1480, 1485 (1st Cir.1989) (finding that a search warrant was a state warrant where the local authorities conducted the investigation and it was initially believed the matter would be prosecuted in state court); *United States v. Burke,* 517 F.2d 377, 384 (2nd Cir.1975) (finding that a warrant issued by a state judge was a federal warrant where both federal and state law enforcement agents swore out the warrant and the sole crime charged was a violation of federal law).

appropriately issued the search warrant pursuant to the authority granted by § 15.725(5).

 In the alternative, the defendant also questions whether Ms. Goad was sufficiently neutral and detached from law enforcement.[2] Bennett challenges Ms. Goad's neutrality by drawing attention to the fact that she ran in a partisan race to be elected to her post. He further points out that she belongs to the same political party as the Commonwealth's Attorney and that the two have attended some of the same fundraisers.[3]

To support his claims, Bennett likens this case to *Coolidge v. New Hampshire*, 403 U.S. 443, 449–53, 91 S.Ct. 2022, 2029–31, 29 L.Ed.2d 564 (1971), and *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 326–29, 99 S.Ct. 2319, 2324–26, 60 L.Ed.2d 920 (1979). The case at bar, however, is markedly different from both of the cases cited by the defendant. In *Coolidge*, the Supreme Court held that a state's Attorney General could not properly issue a search warrant. 403 U.S. at 449–53, 91 S.Ct. 2022. Ms. Goad's position as a circuit clerk is not similar to that of a state attorney general, the chief law enforcement agent of the state. Unlike an attorney general faced with issuing a search warrant, she is not confronted with the dual and conflicting responsibility of both "ferreting out crime" and prosecuting crime. *But cf. id.* at

449–50, 91 S.Ct. 2022. Similarly, this case is distinguishable from that in *Lo–Ji*, where the Supreme Court invalidated a search warrant issued by a judicial officer who also participated in the execution of the warrant. 442 U.S. at 326–28, 99 S.Ct. 2319. Unlike the justice in *Lo–Ji*, Ms. Goad did not participate in the execution of the search warrant; she did not accompany police officers to the scene, nor did she direct them as to which items should be seized. *But cf. id.* at 321–23, 99 S.Ct. 2319.

Accordingly, we reject the defendant's assertion that the search warrant was defective. We conclude that the search warrant in question was a state warrant. The warrant was not required to comport with Rule 41(a) and it was properly issued by a neutral and detached magistrate pursuant to Kentucky's procedural requirements.

### III.

The search warrant issued for Bennett's home authorized a search of:

the premises known and numbered as:

792 Goshen–Church Road

Bowling Green, KY

and more particularly described as follows:

Single story frame home, yellow siding, reddish shutters. The house is approxi-

---

2. By way of clarification, were Ms. Goad not considered neutral or detached, this would necessitate a finding that the state search warrant was constitutionally defective.

3. Although Bennett challenges Ms. Goad's neutrality, in particular, we wish to acknowledge that Kentucky's circuit court clerks are, in general, sufficiently neutral and detached such that they may constitutionally issue search warrants in the absence of all judges from the county. *See Shadwick v. City of Tampa*, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972) (holding that municipal court clerks qualified as neutral and detached magistrates for purposes of the Fourth Amendment and could constitutionally issue arrest warrants). In *Shadwick*, the municipal court clerks in question were employed by the judicial branch of government and were entirely divorced from law enforcement. *Id.* at 350–51, 92 S.Ct. 2119. The Supreme Court reasoned that "[w]hatever else neutrality and detachment might entail, it is clear that they require severance and disengagement from activities of law

enforcement." *Id.* at 350, 92 S.Ct. 2119. On that basis, the Court declined to find any per se lack of neutrality with the municipal court clerks. *Id.* at 352, 92 S.Ct. 2119.

Similarly, Kentucky's circuit court clerks are assigned to the judicial branch and are under the administrative control of the Chief Justice of the Kentucky Supreme Court. KRS § 30A.010. Circuit court clerks are associated with the judiciary, not with law enforcement. Thus, in accordance with *Shadwick*, we note that there is no per se lack of neutrality and detachment with respect to Kentucky's circuit court clerks.

Notably, the Kentucky Court of Appeals has upheld the statute which allows circuit court clerks to issue search warrants in the absence of all judges from the county. *See Commonwealth v. Bertram*, 596 S.W.2d 379 (Ky.Ct.App.1980). Citing to *Shadwick*, the court determined that since the circuit court clerks are subject to the supervision of the judiciary, and not that of law enforcement, they were sufficiently neutral and detached. *Id.* at 381–82.

mately a quarter mile off Porter Pike on the right side of the road.

There is a detached shop building, with overhead or sliding doors on both ends. Same color as the home.

The Kentucky State Police executed the search warrant on the day it was issued, recovering 3 pounds of marijuana from an outbuilding or shop building located on Bennett's property. The defendant's residence and the shop building are approximately 60 to 100 feet apart.

Bennett claims that the police officers exceeded the scope of the search warrant by searching the outbuilding. He argues that the marijuana confiscated from the outbuilding should have been suppressed.

■ First, the defendant asserts that the search warrant only authorized a search of his residence and did not extend to the outbuilding. We find this argument unconvincing. On its face, the search warrant states that "[t]here is a detached shop building, with overhead or sliding doors on both ends. Same color as the home." Thus, we agree with the district court's determination that the description in the search warrant was sufficient to authorize a search of both Bennett's residence and the shop building.[4]

■ Bennett also contends that there was no probable cause to search the outbuilding. He opines that since the supporting affidavit fails to set forth any allegations of illegal activity in the shop building, there is no probable cause to support a search of the outbuilding.[5] In support of his argument,

the defendant cites to this Court's decision in *United States v. Schultz*, 14 F.3d 1093, 1097–98 (6th Cir.1994), for the proposition that a search warrant is invalid when the supporting affidavit lacks evidence which sufficiently links the contraband and the place to be searched.

We conclude that *Schultz* is distinguishable from the instant matter, and our holding there inapplicable to the case at bar. In *Schultz*, two search warrants were issued, one for the defendant's home and one for a safety deposit box the defendant maintained at a financial institution. *Id.* at 1096. This Court determined that there was sufficient probable cause for a search warrant of the defendant's home to issue because there was evidence to establish both that the defendant was selling narcotics and that there might be evidence of that activity at the defendant's home. *Id.* at 1097. But, we also found that there was no evidence tying the defendant's purported drug activities to the safety deposit box. *Id.* at 1097–98. A police officer learned of the box while conducting a credit check of the defendant; thus, the officer had little more than a hunch that contraband or evidence of a crime would be found in the box. *Id.* at 1096–98. For that reason, we decided that the search warrant for the safety deposit box should not have issued.[6] *Id.* at 1098.

In the matter before us, there is no dispute that the affidavit swore out sufficient probable cause to search Bennett's residence—two of the drug transactions between Bennett and the CI occurred inside of the defendant's

---

4. Apparently the Kentucky State Police Officers themselves were slightly confused as to whether the search warrant did or did not cover the outbuilding. One day prior to the actual search, the officers met to discuss the details surrounding the search. At that meeting, it was explained that both the residence and the outbuilding were to be searched. On the day the warrant was executed, an officer, who had been present at the previous day's meeting, began searching the outbuilding and discovered the 3 pounds of marijuana in a desk drawer. That officer was promptly informed that, despite the earlier discussion, the search warrant might not extend to the outbuilding. Although the defendant spends an ample amount of time on these facts, we do not find them particularly relevant. Although the officers effectuating the warrant may have been slightly

confused, the warrant did authorize a search of the shop building on its face.

5. Interestingly, the defendant undercuts his previous argument (that the search warrant did not authorize the police officers to search the outbuilding) while making the instant argument. In the final brief submitted to this court he states: "[a]lthough the shop building was described in the search warrant, the supporting affidavit contains not a single reference to illegal activity in that building." (Appellant's Br. at 13–14).

6. We also determined, however, that the warrant issued for the safety deposit box was saved by the "good faith" exception delineated in *United States v. Leon*, 468 U.S. 897, 906–25, 104 S.Ct. 3405, 3411–22, 82 L.Ed.2d 677 (1984).

home. Rather, the defendant disputes whether that probable cause extends to the outbuilding since no narcotics were sold out of the shop building. In *Schultz,* there was no logical connection between the alleged drug activities and the defendant's safety deposit box, no piece of evidence which linked the two together. Here, however, the shop building and the residence are located on the same piece of real property and are in close proximity to each other. Unlike *Schultz,* there is no need to search for evidence to link the outbuilding to the allegations in the affidavit; the shop building and the residence are sufficiently connected because they are both within the curtilage of the defendant's property.

In this respect, this case is less like *Schultz* and is more analogous to our decision in *Fine v. United States,* 207 F.2d 324 (6th Cir.1953), *cert. denied,* 346 U.S. 923, 74 S.Ct. 310, 98 L.Ed. 417 (1954). In *Fine,* a search warrant was issued for the defendant's residence. *Id.* at 324. The affidavit upon which the warrant was issued declared that there was whiskey in one of the bedrooms in the residence. *Id.* at 325. When officers served the search warrant, no whiskey was found in the home, but whiskey was recovered from a locked shed located 20 feet behind the house. *Id.* We held that the search of the shed was not outside of the scope of the search warrant. *Id.* "The warrant authorized search of the 'premises known as the Harve Fine residence' and of the 'place named.' These terms are broader than a mere description of the house and certainly include the curtilage." *Id.*

■ We note that when examining the legitimacy of search warrants, we are to follow a commonsensical and practical approach, as opposed to an overly technical review. *United States v. Ventresca,* 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965). The warrant in this case, like the warrant issued in *Fine,* authorized a search of "the premises known and numbered as 792 Goshen–Church Road. . . ." This is certainly broad enough to include a shop building located in the curtilage of the property and

which is, at most, 100 feet away from the residence. *See also United States v. Earls,* 42 F.3d 1321, 1327 (10th Cir.1994), *cert. denied,* 514 U.S. 1085, 115 S.Ct. 1800, 131 L.Ed.2d 727 (1995) (finding that a detached garage, shed and office are the type of buildings which are typically part of residential property, such that a warrant authorizing a search of the premises also permitted a search of these outbuildings located within the curtilage of the residence); *United States v. Combs,* 468 F.2d 1390 (6th Cir.1972), *cert. denied,* 411 U.S. 948, 93 S.Ct. 1924, 36 L.Ed.2d 409 (1973) (finding that where contraband was discovered in a residence pursuant to a valid search warrant, there was also probable cause to search an automobile located on the premises and situated close enough to the residence to be considered within the curtilage).

Although the affidavit did not swear to any illegal activity in the shop building, the shop building and residence are, for all practical purposes, one single location because the outbuilding is within the curtilage of the "premises" for which the search warrant was issued. Accordingly, we find that the search of the outbuilding did not exceed the scope of the search warrant.[7]

## IV.

■ Section 3E1.1 of the Sentencing Guidelines permits a two level decrease in a perpetrator's offense level if he or she clearly demonstrates an acceptance of responsibility for the offense. The Guidelines suggest several factors to be considered in this determination, including a voluntary termination or withdrawal from criminal conduct and the timeliness of the defendant's manifestation of the acceptance of responsibility. U.S.S.G. § 3E1.1 Application Note 1(b), (h).

Bennett appeals the district court's refusal to grant a two level reduction in his offense level for acceptance of responsibility. Bennett was indicted for the federal charges in this case in June 1996, and was released on bond. In December 1996, while out on bond, the defendant was subsequently arrested in

---

7. As a result, we decline to reach the Appellant's argument that the search does not fall within the good faith exception discussed in *Leon,* 468 U.S. at 906–25, 104 S.Ct. 3405.

Tennessee for drug offenses. The Tennessee state charges remained pending at the time Bennett was sentenced in the instant matter. Based on this subsequent arrest, the district court determined that Bennett did not voluntarily withdraw from criminal conduct. Consequently, the court denied the defendant a two point reduction for acceptance of responsibility. The defendant claims that the district court erred and requests that we remand the matter for resentencing. We decline to do so.

■■■ Whether a defendant has accepted responsibility and is entitled to the two point reduction is a question of fact subject to a clearly erroneous standard of review. *United States v. Williams,* 940 F.2d 176, 181 (6th Cir.), *cert. denied,* 502 U.S. 1016, 112 S.Ct. 666, 116 L.Ed.2d 757 (1991); *United States v. Wilson,* 878 F.2d 921, 923 (6th Cir.1989) (citing *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989) (citations omitted)). Whether the Guidelines have accurately been applied to a particular set of facts, however, is reviewed de novo. *United States v. Morrison,* 983 F.2d 730, 732 (6th Cir.1993), *cert. denied,* 519 U.S. 887, 117 S.Ct. 222, 136 L.Ed.2d 155 (1996).

Bennett's argument is essentially one of timing. He cites to our decision in *United States v. Childers,* 86 F.3d 562, 563–64 (6th Cir.1996), where we stated:

It is well-established that the "voluntary termination or withdrawal" factor means that criminal conduct that continues *following an acceptance of responsibility*, especially when the conduct is of the same type as or related to the underlying offense, is a significant consideration that will, in almost every instance, make a downward adjustment inappropriate. (Emphasis added).

The defendant contends that since the Tennessee incident preceded his federal trial, it cannot be classified as criminal conduct which continued *following* an acceptance of responsibility. As such, Bennett argues that the Tennessee arrest should not preclude a reduction for acceptance of responsibility.

Notably, the defendant in *Childers* attempted to advance an argument similar to Bennett's. In *Childers,* the defendant was questioned by postal inspectors regarding mail theft in August 1992. *Id.* at 563. Childers admitted that he had committed the thefts and he stated he was sorry for his actions. *Id.* Following this confession but before he was indicted for the mail theft, the defendant was arrested and convicted several times for passing bad checks. *Id.* Two years after his confession, an indictment was finally issued for the possession of the stolen mail. *Id.* The defendant was not immediately arrested, and continued to engage in theft, forgery and other wrongdoing. *Id.* The defendant argued that the events following his 1992 confession should not preclude him from receiving a reduction for acceptance of responsibility. *Id.* at 564. He posited that the determination as to whether he accepted responsibility must be made solely on the basis of events which occurred after his arrest. *Id.* We rejected this argument, noting that "[n]owhere do the guidelines state, or even suggest, that the only relevant 'acceptance of responsibility' is that which follows arrest for the offense of conviction." *Id.* at 564.

Similarly, as we turn to Bennett's argument, nowhere do the Guidelines state that the only relevant acceptance of responsibility is that which occurs at trial. As such, it was well within the court's discretion to decide that the subsequent state charges, lodged after Bennett's indictment for the instant offenses, were at odds with a "clear" demonstration of an acceptance of responsibility. This Circuit has decided that in determining whether one has voluntarily withdrawn from criminal conduct, a sentencing judge cannot consider any kind of illegal conduct, but is limited to considering criminal behavior that is of the same type as the underlying offense. *Morrison,* 983 F.2d at 734. Since both the federal charges and the Tennessee state charges were for the same type of conduct (i.e., drug offenses), there are no grounds for clear error in the court's conclusion that Bennett did not withdraw from criminal conduct.

The defendant's brief submits that "Bennett's trial, the occasion on which he fully accepted responsibility for the crimes charged in Counts 1–5 of the indictment, did not take place until March 18–20, 1997, more

than three months later [than his arrest in Tennessee] ... Therefore, the conduct which occurred in Tennessee could not possibly be 'criminal conduct that continue[d] following an acceptance of responsibility.'" (Appellant's Br. at 18). In effect, then, the defendant would like this Court to agree that he could not have accepted responsibility until his trial and conviction in March 1997. The defendant's position fails to appreciate that the district court is not bound to accept what the defendant declares is the appropriate date of acceptance of responsibility. Rather, the sentencing judge's charge is to decide whether the defendant demonstrates a clear acceptance of responsibility. U.S.S.G §§ 3E1.1(a). The court rightfully decided that defendant's subsequent criminal conduct did not adequately demonstrate the requisite acceptance of responsibility. Thus, we find that the court's denial of a two point reduction for acceptance of responsibility was proper.

## V.

For the foregoing reasons, the jury conviction and the sentence entered by the Honorable Thomas B. Russell, United States District Judge for the Western District of Kentucky, are **AFFIRMED**.