# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE,   :
           :   ID No. 1602017442
    v.      :   In and For Kent County
           :
DESHAWN T. FRIEND,   :
           :
   Defendant.    :

## OPINION

Submitted: October 13, 2016
Decided: December 13, 2016

Gregory Babowal, Esquire, DEPARTMENT OF JUSTICE, Dover, Delaware, *for the State.*

Alexander Funk, Esquire, CURLEY, DODGE & FUNK, LLC, Dover, Delaware, *Attorney for Defendant.*

Clark, J.

## I.    Introduction

The Delaware State Police (hereinafter "DSP") conducted a search at 79 Terry Drive in Magnolia, Delaware.  DSP received information from a confidential informant that Antwan Seney was selling cocaine out of the residence at that address.  While searching the premises, DSP found Defendant Deshawn Friend (hereinafter "Friend") in a shed located at the rear of that property.  Pursuant to a search of the shed, the DSP found 715 bags containing over 10 grams of heroin. The State arrested and charged Friend with Aggravated Possession, Drug Dealing, Conspiracy Second Degree, and Possession of Drug Paraphernalia.

Friend moves to suppress the evidence found during the course of  DSP's search of the shed.  In his motion to suppress, he argues in part, that the four corners of the search warrant and affidavit failed to establish a sufficient connection between the alleged criminal activity and the shed to justify a search of the shed.  The State opposes the motion, stating that the affidavit contained sufficient information to support a finding of probable cause to search the shed.

For the reasons below, although there was adequate probable cause to search the residence on the property, and the shed was located within the curtilage of the property, the holdings in the *Bradley* decisions control this matter.[1]  Namely, under Delaware law, there must be a separate causal connection between the criminal activity alleged and each building on the property that the police seek to search. Here, there was not.  Accordingly, Friend's motion to suppress is **GRANTED**.

---

[1] *State v. Bradley*, 2011 WL 1459177 (Del. Super. Apr. 13, 2011) *aff'd*, 51 A.3d 423 (Del. 2012).

## II.    Facts and Procedural Background

The facts cited herein are those contained in the affidavit in support of the search warrant.  On February 25, 2016, the DSP obtained a search warrant from Justice of the Peace Court No. 2 to search the premises located at 79 Terry Drive, Magnolia, Delaware.  The warrant indicated that the residence was to be searched as well as "all outbuildings located on the property *including but not limited to a wooden shed white in color located in the rear of the property*."[2]  The magistrate issued the warrant based on a police investigation of suspected drug dealing and other drug related crimes allegedly committed by Antwan Seney at the residence.

In support of the warrant, two police officers provided the Justice of the Peace Court with information regarding their investigation.  One of the officers was Detective Vernon.  During December 2015, Detective Vernon contacted a past-proven, reliable confidential informant (hereinafter "CI").  The CI informed the police that he knew "Buzzy" was selling crack cocaine in Magnolia, Delaware.  The detectives were familiar with "Buzzy" from previous drug investigations and knew his real name was Antwan Seney.  The CI informed the detective that "Buzzy" sells large quantities of crack cocaine and that he supplies several other drug dealers with cocaine.  The CI then offered to conduct a controlled buy from "Buzzy."  Detective Vernon conducted a DELJIS inquiry regarding Antwan Seney to obtain his address and prior convictions.  During the first few weeks of January 2016, the CI continued to inform the police of "Buzzy's" drug sales from both his residence at 79 Terry Drive and his wife's residence in Camden-Wyoming.

During the first two weeks of February 2016, Detective Vernon prompted the CI to conduct a controlled buy from Antwan Seney.  Accordingly, the CI then

---

[2] Affidavit in Support of the Search Warrant at 2 (emphasis added).

contacted "Buzzy" and purchased drugs from him at 79 Terry Drive. Detective Vernon collected and preserved the evidence from the purchase.

During the last two weeks in February 2016, the CI conducted another controlled buy from "Buzzy" at his residence in Magnolia. The DSP conducted surveillance of the 79 Terry Drive residence while the CI purchased drugs. The police observed a male matching Seney's description make contact with the CI. Shortly thereafter, the CI left the residence and met with Detective Vernon and gave Detective Vernon the cocaine he had just purchased from Seney.

Based on the detectives' training and experience in past drug investigations, the two detectives provided in the affidavit "[t]hat it is common for drug traffickers to secrete contraband proceeds of drug sales and records of transactions in secure locations within their *residence and/or their business* for their ready access and to conceal their existence from law enforcement officers," and that "the drug trafficker will maintain the balance of the supply *at a secure location, usually at their residence.*"[3] The affidavit did not reference any outbuildings or the shed at issue. Nevertheless, the Justice of the Peace Court found the information sufficient to issue a search warrant for the residence and the outbuilding at 79 Terry Drive. The police executed the search the next day.

Friend was not a target of the search, nor was he suspected to have been involved the drug related crimes alleged to have occurred at Seney's residence at 79 Terry Drive. Nevertheless, when the DSP executed the warrant, they found Friend in the shed located on the rear of Seney's property. While searching the shed, the DSP located 715 bags containing 10.72 grams of heroin and then arrested Friend.

---

[3] Affidavit in Support of the Search Warrant at 9–10 (emphasis added).

Friend filed a motion to suppress asking this Court to suppress all evidence found pursuant to the search of the shed. He argues that the search warrant lacked probable cause as to the shed because the information in the affidavit in support of the search warrant was based on stale, irrelevant, conclusory, unsupported, speculative and uncorroborated information. Furthermore, Friend argues that the warrant lacked probable cause to justify a search of the shed because it insufficiently established a nexus, within its four corners, that demonstrated a connection between suspected evidence or contraband and the shed located on the property under investigation. Namely, Friend argues that because the warrant lacked probable cause that evidence of criminal activity was located in the shed, the Court must suppress the evidence found therein.[4]

## III.  Standard of Review

In a motion to suppress challenging the validity of a search warrant, the defendant bears the burden of proving that the challenged search or seizure was unlawful.[5] A judge's decision that a search warrant is supported by probable cause and therefore should be issued "should be paid great deference by reviewing courts."[6] The burden of proof in a motion to suppress is by a preponderance of the

---

[4] Friend did not argue in his Motion to Suppress or at oral argument that the police required a second warrant for the shed, pursuant to *Maryland v. Garrison*, on the basis that the structure was his residence separate from Seney's residence at 79 Terry Drive. 480 U.S. 79 (1987) (cautioning that the police officers were required to discontinue their search immediately upon discovering the apartment they were searching was a separate residence than the one intended to be searched under the warrant). As Friend did not raise this argument, the Court does not otherwise address it.

[5] *State v. Sisson*, 883 A.2d 868, 875 (Del. Super. Mar. 11, 2005).

[6] *State v. Holden*, 60 A.3d 1110, 1114 (Del. 2013).

evidence.[7]  In this case, both parties stipulated at oral argument than an evidentiary hearing was unnecessary and that this decision requires a four-corners analysis. Namely, a search warrant affidavit "must, within the four-corners of the affidavit, set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place."[8]

## IV.    Discussion

While Friend is unable to show that the magistrate issued the warrant based on stale, irrelevant, conclusory, unsupported, speculative, or uncorroborated information, the warrant is insufficient because the affidavit sets forth no facts establishing a nexus between the illegal activities and the shed.  Accordingly, Friend's motion to suppress evidence recovered from the shed must be granted.

### A.    Friend has standing to challenge the search of the shed.

The State argues that Friend did not have standing to object to the search of the shed because it was not his residence.  In response, Friend argues that it was his residence, and as such, he had an expectation of privacy in the structure. According to Friend, this provided the necessary standing to challenge the search.

When challenging a warrant in a motion to suppress, the burden is on the defendant to establish he has standing[9] as only those who have standing may challenge the legality of a search or seizure and demand the suppression of

---

[7] *State v. Darling*, 2007 WL 1784185, at *1 (Del. Super. June 8, 2007), as corrected (July 3, 2007).

[8] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006).

[9] *State v. Felton*, 2016 WL 3568523, at *7 (Del. Super. June 22, 2016).

evidence.[10]  A person has standing to challenge the legality of a search when the person "has a legitimate expectation of privacy in the invaded space."[11]  A person has a legitimate expectation of privacy if it is "one society is prepared to recognize as reasonable."[12]  The courts have consistently held a person has a reasonable expectation of privacy in one's home.[13]

While the State argued that the shed was not Friend's residence, the State conceded that one of the two addresses identified for Friend on its Pre-Trial Case Report included 79 Terry Drive.  As the property was a listed residence for Friend and the parties concede that he had been sleeping in the shed for some time, he had a reasonable expectation of privacy in the shed and has standing to challenge the search.  Even if it was not his residence as the State contends, he would still have a reasonable expectation of privacy in the structure.  The United States Supreme Court has held that the Fourth Amendment protects overnight guests.[14]  In the State's written response to Friend's motion to suppress, it acknowledged that he had been "staying in the shed."[15]  Therefore, Friend, at a minimum, had been sleeping in the shed, making him at least an overnight guest.  As such, he has a reasonable expectation of privacy in the shed and has standing to challenge the search.

---

[10] *Hanna v. State*, 591 A.2d 158, 162 (Del. 1991).

[11] *Rakas v. Illinois*, 439 U.S. 128, 143 (1978).

[12] *Id.* at 151.

[13] *E.g.*, *Payton v. New York*, 445 U.S. 573, 589–90 (1979).

[14] *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

[15] State's Response to Motion to Suppress at 1.

**B.     The warrant was not based on stale, irrelevant, conclusory, unsupported, speculative, or uncorroborated information.**

Friend argues that the search warrant lacked probable cause because the information contained in the affidavit was stale, irrelevant, conclusory, unsupported, speculative, and uncorroborated. In his written motion, he does not provide any support for this argument nor was any provided at oral argument. In response, the State emphasizes that the police conducted a controlled buy at 79 Terry Drive in February 2016 and the warrant was signed on February 25, 2016. As such, the State argues, the information provided in the warrant was sufficient.

When staleness is alleged, "the test of temporal proximity is determined on an *ad hoc* basis in the light of circumstances of each case."[16] Probable cause must be based on current information.[17] Here, a confidential informant provided the police with information regarding drug dealing by Antwan Seney at his residence from December 2015 through February 2016 when the Justice of the Peace Court issued the warrant.[18] Additionally, the DSP conducted controlled in February 2016, a short time before the magistrate issued the warrant.[19] While there is a short period in between (1) the last controlled buy and the last exchange of information between the police and the confidential informant, and (2) when the magistrate issued the search warrant, this gap in time does not make the information stale.[20]

---

[16] *Gardner v. State*, 567 A.2d 404, 410 (Del. 1989) (quoting *Jensen v. State*, 482 A.2d 105, 111 (Del. 1984)).

[17] *E.g.*, *Sisson v. State*, 903 A.2d 288, 297 (Del. 2006); *Gardner*, 567 A.2d at 410.

[18] Affidavit in Support of the Search Warrant at 4–5.

[19] *Id.* at 5.

[20] In *Gardner*, the Delaware Supreme Court upheld a warrant that set forth information detailing a two-year history of drug dealing with the most recent information provided ten months prior to the issuance of the warrant. 567 A.2d at 410. The Court determined this information was not stale because the evidence was not subject to deterioration or change, the location of the alleged

8

Additionally, the information is clearly not irrelevant, conclusory, unsupported, speculative, or uncorroborated. The information in the supporting affidavit was based on a confidential informant who the police had used in the past and was proven reliable. Furthermore, the information is based, in part, on controlled purchases from Antwan Seney at his residence. The police conducted these purchases with the assistance of the confidential informant and provided surveillance of the residence while they took place. Based on this information, the Court rejects Friend's argument that the warrant did not establish probable cause to search the residence.

**C.** **The warrant lacked probable cause as to the shed because there was not a sufficient nexus between the items sought and the place to be searched.**

Friend next argues that the warrant did not demonstrate a sufficient nexus to search the shed because the supporting affidavit failed to provide information that police would find evidence in the shed or that illegal activity was occurring in the shed. Namely, Friend argues the warrant lacked probable cause because there was not a sufficient nexus between the items sought and the place to be searched.

The United States and Delaware Constitutions as well as Delaware statutory law govern the issuance of search warrants. In order to be valid, the warrant must comply with all requirements from these various sources.

The Fourth Amendment of the United States Constitution states "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."[21] Additionally, the Delaware Constitution states "no warrant to search any

---

criminal conduct had not changed, and there was evidence that the target of the investigation remained at the residence of the alleged location of the drug dealing. *Id.* at 410–11. For the same reasons as in *Gardner*, the information in the warrant at issue here is not stale.

[21] U.S. Const. Amend. IV.

place, or to seize any person or thing, shall issue without describing them as particularly as may be; nor then, unless there be probable cause supported by oath or affirmation."[22]

In furtherance of the Delaware Constitutional provision, the Delaware legislature enacted legislation regarding the issuance of a search warrant. Section 2306 of Title 11 of the Delaware Code requires a search warrant to

> designate the house, place, conveyance or person to be searched and the owner or occupant thereof (if any), and shall describe the things or persons sought as particularly as may be, and shall substantially allege the cause for which the search is made or the offense committed by or in relation to the persons or things searched for, and shall state that the complainant suspects that such persons or things are concealed in the house, place, conveyance or person designated and shall recite the facts upon which such suspicion is found.[23]

Furthermore, section 2307(a) of Title 11 of the Delaware Code provides "[t]he warrant shall designate the house, place, conveyance or person to be searched, and shall describe the things or persons sought as particularly as possible."[24]

Pursuant to the United States Constitution, the Delaware Constitution, and Delaware law, a search warrant must describe the place to be searched with particularity and there must be a nexus between the items sought and the location to be searched. When determining whether probable cause exists, Delaware courts use the totality of the circumstances test established by the United States Supreme Court in *Illinois v. Gates*.[25] Within the four corners of the supporting affidavit, it "must set forth facts adequate for a judicial officer to form a reasonable belief that

---

[22] D.E. Const. Art. I, § 6.

[23] 11 *Del. C.* § 2306.

[24] 11 *Del. C.* § 2307(a).

[25] *E.g.*, *Bradley*, 51 A.3d at 431; *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006); *Fink v. State*, 817 A.2d 781, 787 (Del. 2003).

an offense has been committed and that seizable property would be found in a particular place."[26] However, when a court reviews the issuance of a search warrant, it does not "take the form of *de novo* review."[27] Instead, the reviewing court is to "pay great deference to the factual inferences drawn by an issuing magistrate in his probable cause determination."[28] In the case at hand, this Court reviews the search warrant in this light.

While the warrant described the property to be searched with sufficient particularity (it specifically identifies the outbuilding at issue as a place to be searched), whether there was a nexus between the criminal activity and the place to be searched remains at issue. If there was not a sufficient nexus, the Court must suppress evidence obtained pursuant to the search.[29]

In support of suppression, Friend argues that the Delaware Constitution provides additional protection above that guaranteed under the Fourth Amendment of the United States Constitution by imposing a stricter nexus requirement. His argument that the Delaware Constitution provides additional protection is based on a reading of *State v. Bradley*, *Bradley v. State*, and *Wheeler v. State*.

It is well settled that the Delaware Constitution and the United States Constitution do not provide identical protections. In this regard, the Delaware Supreme Court has held that the Delaware Constitution and the Fourth Amendment are not mirror images of each other.[30] The Delaware Supreme Court outlined on numerous occasions the history behind the Delaware Constitution and why, in

---

[26] *Bradley*, 51 A.3d at 431 (quoting *LeGrande v. State*, 947 A.2d 1103, 1107 (Del. 2008)).

[27] *LeGrande*, 947 A.2d at 1108 (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

[28] *Id.*

[29] *E.g.*, *Dorsey v. State*, 761 A.2d 807, 813–14, 821 (Del. 2000).

[30] *Dorsey*, 761 A.2d at 814.

some areas, it provides more protection than the Fourth Amendment of the United States Constitution.[31]

The Delaware Supreme Court has heard several cases requiring an examination of the nexus requirement providing the Court with ample opportunities to find that the Delaware Constitution provides an additional layer of protection regarding the nexus requirement. Despite those opportunities, the Court has not imposed a stricter nexus requirement than that provided by the Federal Constitution. The Court does not find a basis for Friend's argument that *State v. Bradley*, *Bradley v. State*, and *Wheeler v. State*, together require additional protection under the Delaware Constitution over that which the Federal Constitution already provides in this area.

Namely, while the Court in *Wheeler* noted that the Delaware Constitution provides "protections somewhat greater than those of the Fourth Amendment,"[32] in a footnote the Court set forth three areas where the Delaware Constitution's protections vary from those provided by the Fourth Amendment, incorporated through the Fourteenth Amendment.[33] Noticeably absent from that list was the nexus requirement. Although the Court may not have intended for the enumerated areas identified in *Wheeler* to be a comprehensive list, Friend has not cited

---

[31] *E.g.*, *id.* at 814–17; *Jones v. State*, 745 A.2d 856, 863–867 (Del. 1999). For example, in *Jones v. State*, the Court had to determine whether the Delaware Constitution's search and seizure provisions mean the same thing as similar language found in the Fourth Amendment of the United States Constitution. 745 A.2d at 864. There, the Court determined that based on historical divergence from the Fourth Amendment, the two provisions do not mean the same thing; the Delaware Constitution provides additional protections beyond those provided by the Fourth Amendment. *Id.* at 866.

[32] *Wheeler v. State*, 135 A.3d 282, 298 (Del. 2016).

[33] *Id.* at 298 n.71 (stating that the Delaware Constitution provides additional protections in determining whether a seizure has occurred, that the good faith exception to the exclusionary rule does not apply in Delaware, and by requiring more than probable cause for the issuance of a night time search warrant).

12

authority that provides for any additional protection under the Delaware Constitution in areas outside those articulated in *Wheeler*.[34] Moreover, the Court has been unable to find any historical evidence of a divergence between the Delaware Constitution and the Fourth Amendment in terms of the nexus requirements that would justify finding additional protection under the Delaware Constitution in that area.

Furthermore, the Delaware Supreme Court has examined the nexus requirement of a search warrant on several different occasions and has not articulated additional protections or requirements due under the Delaware Constitution.[35] For instance, in *Sisson*, where the Court reviewed the nexus requirement, it analyzed cases from several different states to determine whether an AOL username was sufficient to establish a nexus between the defendant's residence and his computer and an intercepted image of child pornography.[36] In analyzing other jurisdictions' evaluation of the nexus requirements based on Federal Constitutional law, the Court found a sufficient nexus in that case.[37] It did not analyze the issue at hand in terms of Delaware Constitutional law. Likewise, its decision did not turn on Delaware statutory search and seizure provisions. Accordingly, there is a convergence of the Federal Constitution, Delaware's Constitution, and Delaware's statutes regarding the nexus requirement. They provide parallel protection regarding this matter.

---

[34] *See* Randy J. Holland, The Delaware State Constitution 43–47 (2011) (setting forth the Delaware Constitutional history with regard to search and seizure law and three areas where the Delaware Constitution diverges from the Fourth Amendment).

[35] *E.g.*, *Sission v. State*, 903 A.2d 288 (Del. 2006); *Dorsey*, 761 A.2d 807.

[36] *Sission*, 903 A.2d at 303–08.

[37] *Id.*

While the Delaware Constitution does not provide additional protections regarding a search warrant's nexus requirement, this Court must determine whether the warrant at issue here was constitutional under the Fourth Amendment as applied to the states through the Fourteenth Amendment. In order for a warrant to be supported by probable cause, there must be "a *logical* nexus between the items sought and the place to be searched."[38]

The State argues that there was a nexus between the items associated with drug dealing and the place to be searched, the entire property at 79 Terry Drive, including the outbuilding. The supporting affidavit contains information that drug deals took place at the residence based on controlled buys conducted by a confidential informant. Based on the detectives' training and experience, the detectives knew "that it is common for drug traffickers to secrete contraband proceeds of drug sales and records of transactions in secure locations within their residence and/or their business for their ready access and to conceal their existence from law enforcement officers."[39] The State, while acknowledging that the outbuilding at issue is not mentioned at any place in the affidavit, argues that this language establishes the required nexus as to the outbuilding.

To the contrary, Friend draws a distinction between the residence at 79 Terry Drive and the shed located at the rear of the property. He argues that the nexus connecting the residence to criminal activity merely implicates the house located at 79 Terry Drive and not the entire property, which would include the shed. He further emphasizes that the facts contained in the affidavit establish controlled buys only at the *residence* at 79 Terry Drive. Friend argues that the portion of the affidavit that states drug dealers commonly hide drugs and proceeds in their

---

[38] *Jones v. State*, 28 A.3d 1046, 1057 (Del. 2011); *Dorsey*, 761 A.2d at 811.

[39] Affidavit in Support of the Search Warrant at 9.

14

residence or business is insufficient to justify a search of the shed. He notes that this information does not implicate the shed in any manner, and mention of the residence does not implicate the property as a whole.

For a logical nexus to be present, the affidavit must "set forth facts that would permit an impartial judicial officer to *reasonably* conclude that the items sought would be found in those locations."[40] In the supporting affidavit and warrant at issue here, no mention was made of the shed other than in the description of the property to be searched.[41] The affidavit merely stated drug dealers often conceal contraband in their residence and/or their business.[42]

The common, ordinary meaning of the term residence is the house in which one lives; it does not include detached outbuildings on the same property.[43] Since within the four corners of the supporting affidavit, the DSP did not mention drugs or proceeds from drug dealing being concealed in any outbuildings on the property, an impartial judicial officer could not reasonably conclude that the items sought would be found in the shed.[44]

While there was no independent nexus to the shed itself, the State notes, and the Court agrees, that there was clearly a nexus to the residence and probable cause to search it. Based on other jurisdictions' decisions, one could reasonably argue that because there was a sufficient nexus to the residence, that nexus was sufficient to cover a search of the entire property. If the Court were to accept the argument

---

[40] *Dorsey*, 761 A.2d at 811.

[41] Affidavit in Support of the Search Warrant at 2–11.

[42] *Id.* at 9.

[43] *See* Black's Law Dictionary (10th ed. 2014) (defining residence as "[a] house or other fixed abode; a dwelling); Webster's Dictionary (1987 ed.) (defining residence as a dwelling).

[44] The affidavit did not mention that the DSP expected to find evidence in the outbuildings. The State merely made this argument at oral argument.

that the nexus for the residence provided a legal basis to search the entire property including the shed, then the search warrant at issue here would be constitutional. However, based on a clear reading of *State v. Bradley*, *Bradley v. State*, and *Wheeler v. State*, the Court must reject that argument.

In *State v. Bradley*, the Superior Court was confronted with a warrant that described Dr. Bradley's main office building and one outbuilding.[45] However, when the police officers arrived to search the premises, there were a total of four buildings on the property instead of the two the police officers initially thought.[46] Despite this, the police searched all four buildings.[47] Upon review, the Superior Court determined that there was a sufficient nexus to search the main building and one outbuilding.[48] The Court noted the nexus for the main building was clear because patient files, the items sought, would logically be in the main building where Dr. Bradley primarily examined patients.[49] However, the nexus for the one outbuilding was less clear.[50] As to that building, there was the lone factor cited in the affidavit that one victim's father witnessed Dr. Bradley carrying that patient-victim to that building.[51] The Superior Court determined that a reasonable conclusion from this would be that Dr. Bradley used that outbuilding for medical procedures.[52] The court then inferred that "if a patient is taken to an outbuilding to

---

[45] *Bradley*, 2011 WL 1459177, at *1 (Del. Super. Apr. 13, 2011).

[46] *Id.*

[47] *Id.* at *2.

[48] *Id.* at *8.

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] *Id.*

16

perform a medical procedure, there may be records of what occurred at that location."[53] Consequently, the Superior Court held that it was reasonable to believe that the outbuilding "may hold medical files that would be related to the treatment of his patients."[54] It then held that there was a sufficient nexus to justify the search of that one outbuilding.[55] Accordingly, the court denied, in part, Bradley's motion to suppress with regard to the main office and that one outbuilding.[56]

While there was a sufficient nexus for the primary building and the one outbuilding, the warrant and its supporting documents did not mention the two remaining outbuildings. The State argued that while the warrant did not mention the two other outbuildings on the property, the warrant's identification of the premises authorized an expanded search to those additional outbuildings because there was a nexus for the property as a whole. The Court rejected the State's argument stating "that it cannot find a legal basis under the warrant for the police to search the remaining two outbuildings . . . located on Dr. Bradley's property."[57] The Superior Court rejected the State's argument that a nexus for one or two buildings on a property was sufficient to justify a nexus for all of the buildings located on the property. The fact that there was not a nexus for the remaining two outbuildings on the property required the Superior Court to suppress all evidence that the police found therein.[58]

---

[53] *Id.*

[54] *Id.*

[55] *Id.*

[56] *Id.*

[57] *Id.* at 7.

[58] *Id.*

17

In attempting to avoid suppression, the State argued that the police legally searched the other two outbuildings because they were part of the curtilage of the doctor's office.[59] The Superior Court rejected that argument.[60] The Court was reluctant to find that this building was part of the office's curtilage as it did not satisfy all four factors identified by the United States Supreme Court in *United States v. Dunn*.[61] More importantly, the Superior Court was troubled by allowing the search of this structure through an expanded application (almost an inverse application) of the curtilage doctrine since this doctrine was established by the United States Supreme Court to *extend* Fourth Amendment privacy protections.[62] As such, the Superior Court refused to expand the concept of the curtilage doctrine to allow the State to search a building that it should have specifically addressed in the affidavit and warrant.[63]

When the Delaware Supreme Court reviewed the case, it declined to address Dr. Bradley's argument regarding the search of the two outbuildings not mentioned in the warrant.[64] The Court merely stated "[a]ny defect in the search of" the two remaining outbuildings "is immaterial to this appeal, because no evidence collected from these buildings was introduced at Bradley's trial."[65]

Though the Delaware Supreme Court declined to address the two remaining outbuildings on appeal, its analysis in *Bradley* regarding the other outbuilding

---

[59] *Id.* at *13.

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *Bradley v. State,* 51 A.3d 423, 434–35 (Del. 2012).

[65] *Id.* at 434.

mentioned in the warrant, controls this Court's holding in Friend's case. Namely, the Delaware Supreme Court, in affirming the Superior Court, entertained the same nexus analysis as to the other outbuilding as follows:

> [t]he affidavit clearly stated that Bradley used a white outbuilding on the premises, and that on at least one occasion a father had seen Bradley carry a patient to the outbuilding . . . . The affidavit of probable cause supported a reasonable inference that patient files, whether documentary or photographic, could be found in the outbuilding . . . .[66]

That the Supreme Court in *Bradley* reviewed the link between the evidence of criminal activity and the outbuilding by applying a separate nexus analysis, while also affirming the Superior Court's decision rejecting the curtilage based argument, controls the disposition of Friend's case. Furthermore, the fact that the *Bradley* case involved a business, with outbuildings near the main office on the same property does not distinguish it from Friend's circumstances involving a residence with an outbuilding. An outbuilding to a residence engenders no less of an expectation of privacy than does an outbuilding next to an office. The *Bradley* decision can be read in no other way than to require an independent nexus for each and every detached building on a property that the police wish to search. Furthermore, based on controlling Delaware authority, it is clear that the curtilage doctrine will not justify a search of the outbuildings on a property based on probable cause of criminal activity limited to the house on that property.

Other jurisdictions have taken a similar approach when confronted with such an issue.[67] In jurisdictions that refuse to expand the search, courts provide two

---

[66] *Id.* at 432.

[67] *See United States v. Smith*, 533 F.Supp.2d 227, 231 (D. Mass. 2008) (stating that the court could find no authority to conclude that a search warrant for a particular residence authorized a search of the entire property); *State v. Hamilton*, 290 P.3d 271, 273 (N.M. Ct. App. 2012) (holding that an independently occupied guesthouse located in the backyard of the residence was

19

primary justifications. One justification for declining to extend a valid search warrant to the curtilage is that one of the "fundamental characteristics of a search warrant is that the" search is limited to the place specifically described in the warrant.[68] The person executing the warrant should not have any discretion regarding where to search.[69] Extending a search warrant that validly authorizes the search of a home to authorize a search of the curtilage extends the search warrant beyond what was specifically described, giving the person executing the warrant too much discretion. Another justification for declining to broadly interpret a search warrant as preferred by the State in this case is that the United States Supreme Court recognized the curtilage doctrine in *Oliver v. United States* as an extension of privacy, and therefore, it should not be used to justify the inverse – further infringing upon a person's privacy interest.[70]

This Court, however, does not fully agree with the Superior Court decision in *Bradley* that the State's curtilage argument inappropriately twists the curtilage doctrine.[71] A significant number of jurisdictions have held similar searches to be justified. These courts have been willing to uphold the search of outbuildings where the warrant only authorized the search of the home or where there was not

---

not covered by the search warrant because the warrant did not provide sufficient particularity regarding the guesthouse); *McTyre v. State*, 19 S.W.2d 49, 51 (Tex. Crim. App. 1929) (holding a search warrant for a private residence, outbuildings, and premises did not authorize the search of an outhouse because that structure was not linked to criminal activity in the supporting affidavit).

[68] *People v. Caruso*, 572 N.Y.S.2d 216, 216 (N.Y. App. Div. 1991).

[69] *Id.*

[70] *Hamilton*, 290 P.3d at 276–77.

[71] *State v. Bradley*, 2011 WL 1459177, at *13.

an independent finding of probable cause for the outbuildings.[72] In fact, a significant number have found warrants similar to those in Friend's case to justify a search of outbuildings on the property on the basis of the curtilage doctrine.[73] Those courts view the curtilage to be "part and parcel of the home," and therefore, the person executing the search warrant can search the curtilage and all buildings thereon pursuant to a valid warrant for the home.[74] Some look to the United States Supreme Court decision in *United States v. Ross* to justify extending the search to the curtilage.[75] In *Ross*, the Supreme Court held

---

[72] *See e.g.*, *United States v. Furrow*, 229 F.3d 805, 816–17 (9th Cir. 2000) (overruled on other grounds by *United States v. Johnson*, 256 F.3d 895 (9th Cir. 2001)) (finding a search of the entire property constitutional because the warrant for the residence and four outbuildings was sufficient despite the fact that there was only probable cause for the residence and no separate probable cause that contraband would be found in the four outbuildings); *United States v. Bennett*, 170 F.3d 632, 639 (6th Cir. 1999) (holding a search warrant issued for the defendant's home authorized a search of the premises including an outbuilding despite the fact that there was no separate probable cause for the outbuilding); *United States v. Gorman*, 104 F.3d 272, 275 (9th Cir. 1996) (holding that a search warrant for the residence authorized a search of the entire property); *Nebraska v. Vicars*, 299 N.W.2d 421, 425–26 (Neb. 1980) (finding that a warrant authorizing the search of a residence and not mentioning any outbuildings on the property allowed police to search a calf shed on defendant's property).

[73] *E.g.*, *Gorman*, 104 F.3d at 274; *see also United States v. Moore*, 743 F.2d 254, 256 (5th Cir. 1984) (holding that the search of the detached garage not specified in the warrant was authorized under the warrant for the house); *State v. Trapper*, 269 S.E.2d 680, 684 (N.C. Ct. App. 1980) (holding a warrant authorizing a search for a house also allowed a search of a shed thirty feet from the house because it was within the curtilage); *State v. Stewart*, 274 A.2d 500, 502 (Vt. 1971) (holding the search of a tree was authorized by a warrant to search the house because the tree was within the curtilage).

[74] *E.g.*, *Gorman*, 104 F.3d at 274; *see also Bennett*, 170 F.3d at 639 (stating that the search warrant for the residence covered the search of the shop building within the curtilage of the residence because the curtilage and the residence are "for all practical purposes one single location").

[75] *E.g.*, *United States v. Cannon*, 264 F.3d 875, 880 (9th Cir. 2001); *Gorman*, 104 F.3d at 275; *United States v. Griffin*, 827 F.2d 1108, 1114 (7th Cir. 1987); *Walls v. State*, 944 A.2d 1222, 1232–33 (Md. Ct. Spec. App. 2008).

a warrant that authorizes an officer to search a home for illegal weapons also provides authority to open closets, chests, drawers, and containers in which the weapon might be found. A warrant to open a footlocker to search for marijuana would also authorize the opening of packages found inside. A warrant to search a vehicle would support a search of every part of the vehicle that might contain the object of the search.[76]

According to the jurisdictions that extend the search to the curtilage, there is no "privacy based reason why this principle should be restricted to the inside of a residence and stop at the residence's threshold."[77] In this regard, these jurisdictions find the curtilage of a home to be analogous to a search of containers inside the house.[78] Therefore, a search warrant authorizing the search of the home authorizes the search of anywhere on the property that a suspect could hide those items without the need for separate, independent probable cause recited as to those places.[79] This conclusion is warranted, according to those jurisdictions, because of the cannon that the greater generally includes the lesser, and in this context, the warrant is justifying an intrusion of the home, one of the greatest areas of privacy.[80] Based on this cannon, a logical interpretation of the warrant authorizing the search of the home would also justify the search of the curtilage, which provides a lesser privacy interest.[81]

---

[76] *United States v. Ross*, 456 U.S. 798, 821 (1982).

[77] *Gorman*, 104 F.3d at 275.

[78] *Id.*

[79] *Id.*

[80] *United States v. Brown*, 822 F.Supp. 750, 754 (M.D. GA 1993), *aff'd* 50 F.3d 1037 (11th Cir. 1995); *see also Gorman*, 104 F.3d at 275 (using the privacy interest reasoning in *Brown* to justify extending the search to the curtilage).

[81] *Brown*, 822 F.Supp. at 754.

In addition to the *Bradley* decision foreclosing that approach in the instant case, the jurisdictions upholding such a search use reasoning inconsistent with the Delaware Supreme Court in *Wheeler*. While the *Wheeler* case, in the context of computer related searches, did not directly address the defendant's nexus argument, the Court rejected general warrants.[82] General warrants provide the police with "blanket authority to indiscriminately search persons, houses, papers, and effects."[83] In so holding, the Court distinguished between a general warrant and a warrant that is merely overbroad.[84]

In *Wheeler*, the warrants sought to permit a search of any personal computer, any digital or optical data storage device, any cell phone, any digital camera, any and all data stored on the items seized, and any file stored electronically or in print. The Court found them to be general warrants.[85] While the *Wheeler* decision did not directly address the nexus requirement, it strongly supports the proposition that a warrant needs to have an independent source of probable cause linking each building searched on a single property.

Based on the *Bradley* decisions and the *Wheeler* decision, this Court must reject the argument that clear probable cause to search the residence alone was sufficient to justify a search of the curtilage separately, including the shed. The supporting affidavit was devoid of facts linking the shed to any illegal activity and did not contain any facts alleging that it was likely that evidence would be found in

---

[82] *Wheeler v. State*, 135 A.3d 282, 296–99 (Del. 2016).

[83] *Id.* at 296.

[84] *Id.* The Court noted that a general warrant is one that allows "a general, exploratory rummaging in a person's belongings" whereas an overly broad warrant "describe[s] in both specific and inclusive generic terms what is to be seized, but it authorizes the seizure of items as to which there is no probable cause. *Id.*

[85] *Id.* at 295.

that outbuilding.  As such, this was an unconstitutional search and the evidence found must be suppressed from use at trial.

## V.    Conclusion

For the aforementioned reasons, Friend's motion to suppress is **GRANTED**.