Earl **BRADLEY,** Defendant Below–Appellant,

v.

**STATE of Delaware,** Plaintiff Below–Appellee.

No. 476, 2011.

Supreme Court of Delaware.

Submitted: Aug. 15, 2012.

Decided: Sept. 6, 2012.

426

Robert Goff, Esquire (argued), Nicole M. Walker, Esquire, of the Office of the Public Defender, Wilmington, Delaware for Appellant.

Paul R. Wallace, Esquire (argued), Elizabeth R. McFarlan, Esquire, of the Department of Justice, Wilmington, Delaware for Appellee.

Before STEELE, Chief Justice, BERGER, JACOBS, and RIDGELY, Justices, and STRINE, Chancellor,[1] constituting the Court en Banc.

RIDGELY, Justice:

Defendant–Appellant Earl Bradley, a former pediatrician, was found guilty of fourteen counts of Rape in the First Degree, five counts of Assault in the Second Degree, and five counts of Sexual Exploitation of a Child for acts of sexual and physical abuse committed against children. Bradley was sentenced to fourteen mandatory life sentences and 164 years at Level V imprisonment for these crimes.

At trial, the State presented video evidence of Bradley committing sexual assaults against children, almost all of whom were identified as his patients. Bradley made these videos himself. This evidence was collected during the execution of a search warrant at Bradley's medical practice, BayBees Pediatrics. The warrant authorized the search and seizure of paper and computer files, including medical files, relating to the treatment and care of certain patients who had reported improper touching and vaginal examinations by Bradley to their parents and the police. The warrant also authorized the search and seizure of video and photographs of the location of BayBees Pediatrics.

Bradley raises two claims in this appeal, both relating to the Superior Court's denial of his motion to suppress evidence seized during the execution of that warrant. Bradley argues that the warrant itself was defective because the affidavit in support of the search warrant application did not allege facts establishing probable cause that the patients' medical files would be found in a white outbuilding on the BayBees Pediatrics property, would be contained in digital format, or would relate to the crimes described in the search warrant application. Bradley also contends that the police exceeded the scope of the search warrant by proceeding with a general search to locate and seize evidence without probable cause.

We hold that the issuing judge had sufficient facts before him to make a practical, common-sense determination that evidence pertaining to the commission of a crime or crimes could be found in the patients' medical files, whether in paper or digital format. We also hold that it was objectively reasonable to conclude that Bradley used the white outbuilding identified in the warrant for medical examinations, and that patient files could be found there.

We further hold that the police acted reasonably in executing the warrant with respect to the evidence that was introduced at Bradley's trial. This was not a general, exploratory search prohibited by the United States and the Delaware Constitutions. The police properly searched the white outbuilding identified in the warrant and the main office building for patient "files," whether in digital or paper format. When a detective encountered a depiction of crimes potentially outside the warrant's scope, he immediately stopped his review and applied for another search warrant, which was issued before any further search was conducted. Accordingly, we conclude that Bradley's claims lack merit and affirm.

1. Sitting by designation pursuant to art. IV, § 12 of the Delaware Constitution and Supreme Court Rules 2 and 4.

## Facts and Procedural History

In December 2009, a mother informed a retired Delaware State Police detective of her young daughter's statement that Bradley, the child's pediatrician, had touched her vaginal area in the basement of his office during a routine medical visit. The retired detective informed Detective Thomas Elliott, who sat in on an interview of the child by the Child Advocacy Center. During the interview, the child repeated that Bradley had touched her in that manner.

The Delaware State Police had received prior complaints in 2008 concerning Bradley. Detective Elliott and another officer had sought a search warrant to search BayBees Pediatrics for evidence of child pornography, but that application was denied. One of the 2008 complaints involved a twelve-year-old female who visited Bradley regarding a sore throat and possible pink eye. Bradley conducted a full vaginal examination on her for several minutes. When the girl left, she started crying and told her mother that she felt dirty about the incident. Another case involved a six-year-old girl who visited Bradley for Attention Deficit Disorder. Bradley had the child take her clothes off, and attempted to perform a vaginal examination on her. Finally, a seven-year-old girl visited Bradley for excessive urination. He performed two vaginal examinations on her, with the girl draped so that her mother could not see what was occurring. Detective Elliott also learned of a 2005 investigation into Bradley's conduct by the Milford Police Department.

Based on the prior complaints against Bradley, the December 2009 complaint, and additional investigation, police applied for a new search warrant from the Superior Court. This December 15, 2009 search warrant application stated, in relevant part:

ITEMS TO BE SEARCHED FOR AND SEIZED

1. Files to include medical files relating to the treatment and care of listed children, to include paper files, as well as computer files in regards to Child 1, 2, 3, 4, 5, 6, 7, and 8 and any other alleged Victims that come forward from the time the search warrant is signed, until it is executed.

2. Video and photographs of the below listed location.

SPECIFIC DESCRIPTION OF PREMISES AND / OR PLACE(S) AND / OR VEHICLE(S) AND / OR PERSON(S) TO BE SEARCHED:

A two story residence style building, white in color, located at 18259 Coastal Highway, Lewes, DE. 19958. There is a yellow Volk[s]wagon, with BayBees Pediatrics displayed on the car. There are signs at the front of the building that display "BayBees Pediatrics["] and ["]Earl B. Bradley["] on the signs.

NAME OF OWNER(S), OCCUPANT(S) OR POSSESSOR(S) OF PREMISES AND/OR PLACE(S) AND/OR VEHICLE(S) AND/OR PERSON(S) TO BE SEARCHED:

Earl B. Bradley (DOB–05/10/53), a white male. BayBees Pediatrics, 18259 Coastal Highway, to include a white outbuilding, located on the property.

In the supporting affidavit of probable cause, Detective Elliott described reports of inappropriate touching and examinations of eight girls between the ages of approximately three years old and twelve years old. The reports included statements that Bradley kissed patients on the mouth, touched their vaginal areas without apparent medical reason, or carried them

around the office excessively. The affidavit also included accounts from former colleagues of Bradley that patients had transferred from Bradley to them because Bradley conducted inappropriate vaginal examinations, separated children from their parents for long periods of time, or forced children to undress.

The affidavit also recounted a statement from a former employee that Bradley had installed surveillance cameras throughout his current office, and that Bradley could access those cameras from his home. According to a former colleague, Bradley took digital pictures of patients and manipulated the pictures on his computer.

In describing the patient complaints, the affidavit referred to the main building and to an "outbuilding" behind Bradley's office:

> During an interview with the father of the child he advised when he was at the office on 10/28/09, he observed Dr. Bradley carrying a patient to an outbuilding located behind the office.

Detective Elliott represented that he had corroborated the address of the BayBees Pediatrics, and the existence of an outbuilding on the property. The affidavit stated:

> The office also has an outbuilding, which affiant has learned is utilized by Dr. Bradley. Dr. Bradley takes his patients into the outbuilding as well as the basement of his office.

> \*     \*     \*

> Your Affiant has shown that there is information that Dr. Bradley has installed video recording devices throughout his office which not only are accessible by Dr. Bradley at his office but that Dr. Bradley has also configured the material recorded to be accessed at his home with the use of his home computer. Your Affiant has also shown information that Dr. Bradley uses his personal computer in the Doctor's office and at home, takes digital photographs of patients and manipulates them on the computer.... Your affiant believes that evidence may be found on Dr. Bradley's computers and/or digital recording equipment that will be able to corroborate statements made by witnesses, help in identification of other victim[s] in the search warrant. Your affiant also has knowledge that doctors use computers to store patient records and details of patients['] visits to the doctor.

Finally, in its request to search and seize computers electronic storage devices, the affidavit stated: "[a] suspect may try to conceal criminal evidence, he or she might store it in random order with deceptive file names. This may require searching authorities to examine all stored data to determine which particular files are evidence or instrumentalities of crime."

Police executed the search warrant on the morning of December 16, 2009. When the police arrived at BayBees Pediatrics, they discovered that the property contained four buildings, not two as previously believed. The four buildings consisted of: a main building for the medical practice ("Building A"); a white outbuilding ("Building B"); a white garage ("Building C") and a tan shed ("Building D"). Detective Elliott later testified at the suppression hearing that, in preparing the search warrant application, he had driven by on Route 1 and had only observed Building A and a "large white building towards the rear of the property," later determined to be Building B.

When Detective Elliott and his superiors observed the additional buildings on the day of the search, they called a Deputy Attorney General and asked for assistance. The Deputy Attorney General told them that she was on her way to the scene. By the time she arrived, however, the search

was already under way. The police had concluded, without awaiting further advice from the Deputy Attorney General, that the warrant applied to all the buildings on the BayBees Pediatrics property.

Police officers entered Building A and found a video camera on the exam table of the first patient examination room on the right as they entered. The police also found and collected a digital camera from the office area behind the reception room. That camera was sitting on top of paper files. A video camera was also collected from a shelf in the basement of Building A. Police turned the cameras over to the High Tech Crime Unit for analysis without inspecting any data on them. Police recovered paper files for seven of the eight victims listed in the search warrant from Building A, except for the victim who had been linked to the 2005 investigation by Milford police.

Police officers also entered Building B, which contained an office area with a desk and shelving. They recovered numerous digital recording and storage devices from this building, including: five thumb drives from the top of the door frame; two digital hand-held recorders from the shelving and floor by the desk; six other thumb drives and three larger forms of removable media from the desk area; a 2G SanDisk card from a white envelope on a shelving unit; a SanDisk Cruiser thumb drive and Sony Handycam from the dresser; a Sony Net Share camera by the doors; a DVD; and two pen cameras, approximately four to five inches long. Police officers also found a Dell Dimension computer sitting on the desk, with a HP 4G thumb drive in the USB port. They recovered that thumb drive as well as a Sony HD webcam located next to the computer.

Police officers did not seize any evidence from Building C. Police officers entered Building D, the tan shed, and seized a total of thirty-four memory cards, a DVD, a thumb drive, and a desktop computer.

On December 17, 2009, Detective James Spillan began analyzing the digital evidence seized during the search. He first examined the 4G thumb drive that was connected to the Dell computer on Bradley's desk in Building B. The thumb drive contained seven deleted files. The first file that Detective Spillan encountered indicated a date of September 30, 2009 and had a mpg extension, typically indicating a video file. He opened the file and saw a video of Bradley in Building B with a female child approximately three years old. The child appeared upset or in distress, and was crying for her mother. The video showed Bradley pointing the child toward the camera and reaching to remove the child's diaper. At this point, Detective Spillan stopped watching the video, removed the thumb drive from his computer, and reapplied for a new search warrant. He did not review any other material seized. Based on his training, he believed that the video was evidence of sexual exploitation or child pornography. In the new search warrant application, Detective Spillan requested permission to search all of the digital media retrieved the prior day for evidence of these additional crimes. The Superior Court approved the subsequent search warrant application, and the police executed those warrants.

Bradley was arrested the same day that the initial search warrant was executed. He was later indicted on multiple counts of Rape in the First Degree, Assault in the Second Degree, and Sexual Exploitation of a Child, along with other charges. Bradley moved to suppress evidence seized pursuant to the searches conducted on December 16 and December 17. After a two-day evidentiary hearing and briefing by the parties, the Superior Court denied the

motion in a forty-three-page written opinion.

Thereafter, Bradley waived his right to a jury trial, and the parties proceeded to a bench trial based on an amended superseding indictment. The State presented videotape evidence of the sexual offenses. The average age of the victims was only three years old. Some of the videos depicted Bradley carrying young children down to the basement below Building A. He would pull the girl's underwear down and film her vagina or buttocks. The videos depicted him fondling or kissing girls, and occasionally depicted him attempting to perform cunnilingus on them. In other cases, Bradley used a hidden pen camera to film a girl's vagina in the examination room, under a drape, as he performed a vaginal examination. Some of the videos depicted violent, forcible rapes of young children in Building B. These child victims generally were toddler-aged.

The trial judge found Bradley guilty of all crimes charged in the amended superseding indictment. He was sentenced to fourteen mandatory life sentences and 164 years at Level V imprisonment. This appeal followed.

### Analysis

■ Under the United States and the Delaware Constitutions, "a search warrant may be issued only upon a showing of probable cause."[2] To determine whether probable cause exists, Delaware courts follow the totality of the circumstances test set forth by the United States Supreme Court in *Illinois v. Gates*.[3] Within its four corners, "[t]he affidavit in support of a search warrant must set forth facts adequate for a judicial officer to form a reasonable belief that an offense has been committed and that seizable property would be found in a particular place."[4] As the United States Supreme Court stated in *Gates:*

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.[5]

In making this decision, the judicial officer "may draw reasonable inferences from the factual allegations in the affidavit."[6]

### *The Warrant Alleged Sufficient Facts to Support a Search*

■ Bradley contends that the search warrant was defective because it failed to allege sufficient facts for the reviewing judge to conclude that patient medical files could be found in a "white outbuilding" now known as Building B. Bradley also contends that there was insufficient basis to believe that patient files would contain information relevant to the crimes alleged in the affidavit, or be kept in electronic format. Bradley argues that the warrant failed to provide any factual basis for believing that files were hidden. Therefore, the search warrant authorized only a

2. U.S. Const. amend. IV; Del. Const. art. 1, § 6; *Fink v. State*, 817 A.2d 781, 786 (Del. 2003).

3. *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006); *Fink*, 817 A.2d at 787; *Gardner v. State*, 567 A.2d 404, 409 (Del.1989).

4. *LeGrande v. State*, 947 A.2d 1103, 1107–08 (Del.2008); *Fink*, 817 A.2d at 787.

5. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

6. *Sisson*, 903 A.2d at 296.

search for patient files "where they would usually be kept." We conclude, for the reasons that follow, that these claims are meritless.

Bradley contends that affidavit failed to provide a sufficient basis to conclude that Bradley kept his patient files in the "white outbuilding" referenced in the search warrant. But, the affidavit clearly stated that Bradley used a white outbuilding on the premises, and that on at least one occasion a father had seen Bradley carry a patient to the outbuilding. The affidavit described other witnesses and complainants having stated that Bradley carried his patients around the office during their medical appointments. The father's statement provided a reasonable basis to infer that Bradley carried patients to the outbuilding for medical examinations. Given this use and the proximity of the outbuilding to the main practice room, it also was reasonable to infer that Bradley used the space for medical examinations or office work. As the Superior Court found:

> The Court which issued the warrant was required to assume that the doctor would have had a legitimate medical reason for taking the child to that location. And it also follows that if a patient is taken to an outbuilding to perform a medical procedure, there may be records of what occurred at that location. In other words, until they discovered otherwise, the fair assumption would be that there was a medically based rationale for the actions of Dr. Bradley. It therefore follows that there is a reasonable basis to find that outbuilding B may hold medical files that would be related to the treatment of his patients and the warrant appropriately authorized the search for files at that location.[7]

We find no error in this analysis. The affidavit of probable cause supported a reasonable inference that patient files, whether documentary or photographic, could be found in the outbuilding, along with other evidence of patient treatment. For the reasons discussed below, this evidence was directly relevant to the patient complaints described in the affidavit.

Bradley also argues that the affidavit of probable cause fails to establish a link between the patient files to be searched and the allegations of inappropriate examinations. We disagree. The affidavit is replete with information that the complainants received vaginal examinations during routine medical visits. It is common sense to infer that a patient's medical file would be relevant in determining whether the vaginal examinations were part of an appropriate course of treatment, or whether instead they were a guise for improper sexual contact. Patient medical files also could corroborate or contradict the timeline provided by the complainants. As the Superior Court reasoned, "[t]he patient's file would demonstrate (a) whether the child was at the doctor's office in the time frame suggested, (b) what was the reason for the visit and (c) whether there was documentation in the file to support a medically appropriate reason for the conduct described by the child."[8] The Superior Court properly concluded that the information provided in the four corners of the affidavit and the reasonable inferences to be drawn therefrom supported a search of patient files for information relating to the alleged crimes.

Bradley next challenges the warrant for failing to explicitly state that Bradley kept patient files in electronic format. Again, it is common sense to infer

---

**7.** *State v. Bradley,* 2011 WL 1459177, at *8 (Del.Super. Apr. 13, 2011).

**8.** *Id.* at *9.

that in the year 2009 a medical practice would keep at least some patient records in electronic format. Moreover, the affidavit expressly stated that Bradley installed video recording devices throughout his office, took digital pictures of his patients, and manipulated those digital pictures on his computer. The affidavit also sets forth the affiant's knowledge that "doctors use computers to store patient records and details of the patients['] visits to the doctor."

A digital image of a patient is properly understood as a medical file relevant to determining whether the vaginal examinations and other conduct described by the complainants were part of appropriate medical treatment. Digital pictures and videos could also corroborate whether a child was treated at Bradley's office around the time that the alleged crimes occurred. The circumstances set forth in the affidavit provided sufficient facts to believe that evidence of the crimes could be found in electronic medical files. The Superior Court did not err in holding that the affidavit provided probable cause for the search.

### The Police Did Not Exceed the Scope of the Warrant

Bradley next contends that the police exceeded the scope of the warrant by searching all four buildings on the Bay-Bees Pediatrics property and by seizing all of the computers and electronic devices they found. Bradley argues that the po-

lice used the search warrant as a pretext to engage in a general, exploratory search for evidence of child pornography—a crime alleged in the denied 2008 search warrant but not in the 2009 search warrant.

■■■ We review an alleged constitutional violation *de novo*.[9] When reviewing the denial of a motion to suppress, we also review the Superior Court's legal conclusions *de novo*.[10] We review the Superior Court's factual findings to determine "whether there was sufficient evidence to support the findings and whether those findings were clearly erroneous."[11]

■■■ When conducting a search pursuant to a warrant, the police generally may not exceed the scope of that warrant.[12] "By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."[13] If police search areas or things outside of the warrant's scope, the improperly seized evidence may be suppressed.[14] Delaware does not recognize a good faith exception to the exclusionary rule.[15]

■■■ Bradley claims that police officers exceeded the scope of their authority when they searched Building B. Bradley argues that the warrant only authorized the

---

9. *Swan v. State,* 28 A.3d 362, 382 (Del.2011); *LeGrande,* 947 A.2d at 1107.

10. *Lopez–Vazquez v. State,* 956 A.2d 1280, 1284–85 (Del.2008).

11. *Id.* at 1285.

12. *Marron v. U.S.,* 275 U.S. 192, 196, 48 S.Ct. 74, 72 L.Ed. 231 (1927); *see Cooke v. State,* 977 A.2d 803, 854 (Del.2009).

13. *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72, (1987).

14. *See id.* at 84–85, 107 S.Ct. 1013; *Cooke,* 977 A.2d at 854 ("As a general rule, police are precluded from seizing articles that are not specifically described in the search warrant.").

15. *Dorsey v. State,* 761 A.2d 807 (Del.2000).

search of two buildings—the main office building and a "white outbuilding"—and that the search of all four buildings demonstrates a general exploratory search unconfined by the language of the affidavit.

▮ The search warrant listed the "place" to be searched as "BayBees Pediatrics, 18259 Coastal Highway, to include a white outbuilding, located on the property." Thus, the warrant did not expressly limit the search to any particular building(s) on the property. Moreover, "we must judge the constitutionality of [police officers'] conduct in light of the information available to them at the time they acted." [16] Under the circumstances, it was reasonable for the police officers executing the warrant to conclude that Building B was the white outbuilding. Building B was a separate building on the BayBees Pediatrics property with three white sides and a white entrance. Detective Elliott testified that, when drafting the search warrant, he observed only Buildings A and B. He testified that any additional structures had appeared to be attached to Building A. Detective Elliott also led the execution of the warrant, including the search of Building B. The police officers searched Building B, which was in fact the outbuilding referred to in the affidavit.

The Superior Court found as fact that the police officers reasonably concluded that Building B was the white outbuilding referred to in the warrant, and that Building B was in fact the outbuilding that Detective Elliott attempted to describe in the warrant. The Superior Court's findings are supported by the record and are not clearly erroneous.

Bradley's challenge to the search of Building B is the most vociferous precisely because it is where the key evidence used at his trial was found, which are the video recordings Bradley compiled of his appointments with his patients and that were found in the office Bradley himself personally used. But the police's testimony that Building B was the outbuilding described in the warrant, used in Bradley's practice, and subject to being searched was supported, rather than undercut, by the undisputed fact that Building B was the building on the premises in which Bradley maintained his own personal working space— *i.e.,* the Doctor's own office. As noted, the affidavit in support of the warrant specifically indicated that Bradley had installed surveillance and other video recording equipment that enabled him to work with images of patients taken in other rooms at "his office" and that he "uses his personal computer in the Doctor's office." Not only that, the affidavit made clear that the outbuilding was "utilized by Dr. Bradley," which is consistent with it being the site of his personal office space at the practice. Thus, central to the search authorized by the warrant was an examination of Bradley's own work space at the practice for files, including video or computer files, "relating to the treatment and care of" certain patients. Building B was where that work space was located. Put in plain terms, the warrant clearly authorized the search of the Doctor's office and thus Building B.

▮ Bradley also challenges the search of Buildings C and D. Any defect in the search of Buildings C or D is immaterial to this appeal, because no evidence collected from these buildings was introduced at Bradley's trial. If the evidence was not used to locate additional evidence or introduced at trial to establish Bradley's guilt, there can be no prejudice to Bradley from the alleged seizure of material outside the scope of the warrant. Any improper seizure from Buildings C and D would not

---

**16.** *Garrison,* 480 U.S. at 85, 107 S.Ct. 1013.

affect the admissibility of evidence properly seized from the other buildings.[17] Because any defect in the search of Buildings C and D was immaterial, we need not reach the question of whether the evidence would have been admitted under the inevitable discovery doctrine or the independent source doctrine.

■ Bradley next argues that police exceeded the permissible bounds of the warrant when they seized all of the computers, digital storage devices, and recording equipment found in Buildings B and D. Bradley claims that this material was "unrelated to patient files."

■ As an initial matter, a recordation of a patient by a doctor during that patient's appointment is properly understood as part of a patient "file." The affidavit provided a basis to believe that Bradley had taken pictures and video recordings of his patients. In other words, there was reason to believe that patient files were kept as images, videos, or documents. Moreover, the warrant authorized a search of "[f]iles *to include* medical files relating to the treatment and care" of certain patients. These files could have been located on any of the computers found at BayBees Pediatrics, or stored on any electronic storage device. A search warrant authorizing the seizure of specific items permits the seizure of objects that could reasonably contain those items.[18] Here, the computers and digital storage devices could reasonably contain the patient files described in the warrant, whether in text or image form.

Bradley suggests that the police essentially should have ended their search upon locating paper medical charts for seven of the eight complainants in the warrant. The warrant did not limit the items subject to seizure to paper files. It was reasonable for the police to continue the search on computers and digital storage devices for other files relating to the eight complainants. It also was reasonable to search for such files in Building B, given the averment that Bradley used that building in his medical practice.

■ Finally, Bradley contends that Detective Spillan exceeded the scope of the warrant when he opened a deleted thumb drive file that was labeled with numbers indicating a date of September 30, 2009 and a "mpg" extension. Bradley argues that there was no indication that the file was related to any of the eight patients named in the warrant.

Detective Spillan's actions were reasonable in light of the complaints described in the affidavit and the items found during the December 16, 2009 search. The affidavit alleged that Bradley installed surveillance cameras throughout his office, which he could observe from home, and that he took images of patients which he then manipulated on his home computer. Detective Spillan was also aware that video cameras had been collected from the medical examination rooms in Building A, creating a reasonable inference that Bradley

---

**17.** *See United States v. Hamilton*, 931 F.2d 1046, 1053–54 (5th Cir.1991) ("[U]nder the 'severability' doctrine, items that are illegally seized during the execution of a valid warrant do not affect the admissibility of evidence legally obtained while executing the warrant.").

**18.** *See United States v. Giberson*, 527 F.3d 882, 886–87 (9th Cir.2008) (holding that search warrant describing particular documents authorized seizure of computer which agents reasonably believed would contain those documents); *United States v. Reyes*, 798 F.2d 380, 383 (10th Cir.1986) (recognizing that, "in the age of modern technology, ... the warrant could not be expected to describe with exactitude the precise form the records would take").

filmed patients during medical examinations. It was reasonable for Detective Spillan to infer that Bradley recorded portions of medical examinations, and that the video file may have been related to the complaints described in the affidavit. The search warrant also authorized a search of "[f]iles to *include* medical files," and did not limit the search to files that were plainly labeled as medical files.

We refuse to interpret the warrant so narrowly as to hold that a digital file must have been labeled with the patient's name or the exact date of a confirmed visit, and kept in a traditional text format, to permit review in these circumstances. The Superior Court properly found a sufficient nexus between the conduct alleged and the file searched to support Detective Spillan's decision to open the file. As soon as Detective Spillan encountered evidence of crimes potentially falling outside the scope of the existing warrant, he did precisely what he should have done: he closed the file, ceased the search, and applied for a new search warrant for sexual exploitation and child pornography. Bradley's final claim on appeal lacks merit.

### *Conclusion*

We conclude that the affidavit of probable cause alleged sufficient facts to support the search warrant issued on December 15, 2009. We further conclude that the actions of the police officers in executing the search warrant were reasonable and within the bounds of the warrant issued. Because Bradley's appeal is without merit, the judgment of the Superior Court is **AFFIRMED.**