IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILLIAM HUDSON, | § | |
| | § | |
| Defendant Below, | § | No. 382, 2018 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 1410004172 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 8, 2019
Decided: January 21, 2020

Before **SEITZ,** Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

# **O R D E R**

(1)    The appellant, William Hudson, has appealed the Superior Court's denial of his first motion for postconviction relief under Superior Court Criminal Rule 61.  After careful consideration of the parties' briefs and the record, we affirm the Superior Court's judgment.

(2)    Hudson began sexually abusing his daughter in 2008, when she was twelve years old.  The abuse included using a vibrator on her vagina, inserting sexual stimulation devices and his fingers into her vagina and anus, and forcing her to masturbate him.  The abuse continued regularly, several times a week, until April 2011, when the victim disclosed the abuse to the Department of Family Services. After that interview, New Castle County police officers obtained and executed two

search warrants for Hudson's home, where they found multiple vibrators and sexual stimulation devices. The devices contained the victim's DNA, and at least one of them contained both the victim's and Hudson's DNA.

(3) Following a jury trial, Hudson was convicted of ten counts of Sexual Abuse of a Child by a Person in a Position of Trust, one count of Continuous Sexual Abuse of a Child, one count of Endangering the Welfare of a Child, and two counts of Violation of Privacy.[1] The Superior Court sentenced Hudson to a total of 122 years of unsuspended prison time. Hudson appealed, represented by different counsel than represented him at trial. This Court affirmed on direct appeal.[2]

(4) Hudson then filed a *pro se* motion for postconviction relief. The Superior Court granted Hudson's motion for appointment of postconviction counsel, and the Office of Conflict Counsel appointed counsel to represent him. Postconviction counsel later moved to withdraw under Superior Court Criminal Rule 61(e)(6), indicating that, after a careful review of the record, counsel had not identified any potential grounds for postconviction relief. After expanding the record with briefing and an affidavit from trial counsel, the Superior Court denied Hudson's motion for postconviction relief. The Superior Court then directed the

---

[1] The jury found Hudson guilty of fifteen additional counts of Sexual Abuse of a Child by a Person in a Position of Trust, but the State dismissed those counts after trial because they related to a time period before June 2010, when the statute creating the offense was enacted. *Hunter v. State*, 2014 WL 1233122 (Del. Mar. 24, 2014).
[2] Id.

2

parties to address certain claims that Hudson had asserted concerning the effectiveness of appellate counsel. After receiving briefing and an affidavit from appellate counsel, a Superior Court Commissioner recommended that these additional claims be denied, and the Superior Court adopted the Commissioner's recommendation. Hudson now appeals to this Court.

(5) On appeal, Hudson argues that (i) his conviction should be "set aside" because appellate counsel, postconviction counsel, and the Superior Court did not review transcripts of all of the trial court proceedings; (ii) postconviction counsel rendered ineffective assistance of counsel by failing to review all of the transcripts; (iii) trial and appellate counsel provided ineffective assistance because they failed to seek to suppress two videos that were obtained by execution of an allegedly defective warrant; (iv) trial counsel rendered ineffective assistance when he failed to object to the indictment; (v) trial counsel provided ineffective assistance by failing to request a bill of particulars; (vi) trial counsel provided ineffective assistance by failing to conduct an adequate pretrial investigation, failing to interview or subpoena additional fact witnesses, and failing to present any evidence after the conclusion of the State's case; (vii) one of the jurors was potentially biased and trial counsel was ineffective when he did not object to the juror's inclusion on the jury; (viii) trial counsel provided ineffective assistance by failing to present the testimony of the victim's pediatrician or the victim's medical records, and by failing to consult with

3

or subpoena medical, DNA, or computer experts; (ix) appellate counsel was ineffective for failing to appeal the Superior Court's denial of a motion for a mistrial and the court's denial of a motion for a judgment of acquittal; and (x) his conviction should be reversed based on cumulative error.

(6) We review the Superior Court's denial of postconviction relief for abuse of discretion and review questions of law *de novo*.[3] The Court considers the procedural requirements of Rule 61 before addressing any substantive issues.[4] Rule 61(i)(3) provides that any ground for relief that was not asserted in the proceedings leading to the judgment of conviction is thereafter barred unless the defendant can establish cause for relief from the procedural default and prejudice from a violation of the defendant's rights. To establish cause, the movant must establish that an external impediment prevented him from raising the claim earlier.[5] To establish prejudice, the movant must show actual prejudice resulting from the alleged error.[6]

(7) Most of Hudson's claims on appeal assert ineffective assistance of counsel. A claim of ineffective assistance of counsel can constitute "cause" under Rule 61(i)(3).[7] In order to prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that (i) his defense counsel's representation fell below

---

[3] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).
[4] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[5] *Id.* at 556.
[6] Id.
[7] *Cook v. State*, 2000 WL 1177695, at *3 (Del. Aug. 14, 2000).

4

an objective standard of reasonableness, and (ii) there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.[8] Although not insurmountable, there is a strong presumption that counsel's representation was professionally reasonable.[9] A defendant must also make concrete allegations of actual prejudice to substantiate a claim of ineffective assistance of counsel.[10] The same *Strickland* framework applies when evaluating a claim that appellate counsel provided ineffective assistance.[11]

(8) Hudson argues that his postconviction counsel provided ineffective assistance because he did not review the "entire record," including the transcripts of all of the trial court proceedings. Specifically, Hudson asserts that postconviction counsel could not have reviewed the entire record, because transcripts of jury selection on January 31, February 1, and February 2, 2012 were not prepared until after the Superior Court denied Hudson's motion for postconviction relief and ruled on postconviction counsel's motion to withdraw.[12] We find no reversible error. As

---

[8] *Harris v. State*, 2018 WL 3239905, at *2 (Del. July 2, 2018) (citing *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984)).

[9] *Albury v. State*, 551 A.2d 53, 59 (Del. 1988).

[10] *Younger*, 580 A.2d at 556.

[11] *Neal v. State*, 80 A.3d 935, 946 (Del. 2013).

[12] When Hudson filed this appeal, he designated for transcription the proceedings from January 31, 2012 through February 7, 2012. He indicated that January 31, 2012 and February 1, 2012 had never been transcribed and that February 2, 3, 6, and 7, 2012 had already been transcribed and should be transmitted to this Court as part of the record. The Superior Court approved preparation of the transcripts at state expense. After this Court granted certain extensions for the preparation of transcripts and the filing of the record, the record with transcripts was filed with this Court on November 30, 2018. Although Hudson had designated the proceedings on January 31, 2012 for

5

an initial matter, "a claim of ineffective assistance of postconviction counsel is not viable, because there is no constitutional right to counsel in a postconviction proceeding."[13] Moreover, to the extent that Hudson also asserts this claim with respect to his appellate counsel, he has not demonstrated that his counsel's representation fell below an objective standard of reasonableness, nor is there a reasonable probability that the result of the proceedings would have been different if counsel had reviewed the specified transcripts.[14] All of the transcripts have now been prepared, and Hudson has not identified any viable issue for review arising from those transcripts; nor has this Court found any. Indeed, the transcript of the proceedings on January 31, 2012—the only one that had not been prepared before Hudson filed his briefs in this case—records the first day of jury selection, at the conclusion of which the parties jointly moved to strike the entire panel, because of concerns that arose relating to comments that potential jurors had made in the courtroom or hallway. The Superior Court granted the motion, and voir dire and jury selection began anew the next day, with a new group of potential jurors.

---

transcription, a transcript of the proceedings on that date was not prepared. Therefore, on August 29, 2019, this Court directed the court reporter to prepare the transcript of January 31, 2012 for the record, and to send copies to Hudson and counsel for the State. This Court received the missing transcript on October 2, 2019.

[13] *Asbury v. State*, 2019 WL 4696781, at *4 (Del. Sept. 25, 2019); *Watson v. State*, 2009 WL 2006883, at *2 (Del. July 13, 2009) (citing *Pennsylvania v. Finley*, 481 U.S. 551 (1987)).

[14] *See Stone v. State*, 690 A.2d 924, 925-26 (Del. 1996) (rejecting claim that appellate counsel provided ineffective assistance by failing to obtain a transcript for use on direct appeal because the appellant "failed to demonstrate how the outcome of the appeal would have been different had the transcript been reviewed by this Court").

6

(9)     To the extent that Hudson argues that the transcript issue presents a basis for reversal independent of his ineffective assistance claim, we similarly find no merit to that claim.  Hudson or his counsel have received all of the transcripts, and this Court has reviewed them and finds that any failure to provide them earlier did not prejudice Hudson.[15]

(10)    Next, Hudson claims that his trial and appellate counsel were ineffective because they did not seek to suppress two videos of the victim in the shower that the police found on a computer at the Hudson home.  After the DFS interview in which the victim disclosed the abuse, New Castle County police officers obtained and executed a search warrant for Hudson's home.[16]  The subjects of that first warrant were a white vibrator that the victim had identified and a receipt reflecting the purchase of the vibrator.  In the probable cause affidavit for a second search warrant,[17] the officer who executed the first warrant indicated that he arrived

---

[15] *Cf. Watson v. State*, 2001 WL 339637, at *1 (Del. Mar. 30, 2001) ("It is well settled in Delaware that the loss of part of the trial record does not entitle the appellant to a new trial as a matter of law.  In order to obtain a new trial due to the loss of the trial record, the appellant must show that a) the lost record is vital to a proper review of the appellant's case; and b) there is no practicable way of reconstructing the record or of providing a sufficient substitute.  Additionally, a defendant must show that the missing portion of the trial record prejudices the defense.  'A transcript or an adequate substitute for a transcript is required only to the extent that it is essential for the presentation of a particular issue on appeal.'" (footnotes omitted)).  *Cf. also Asbury*, 2019 WL 4696781, at *1 n.2 ("While review of trial transcripts may be necessary to resolve the claims raised in some appeals, Asbury has not explained how the complete trial transcript is necessary to resolve any of the issues raised in this appeal from denial of postconviction relief.").

[16] A18-21.

[17] A22-32.

at the home to execute the first warrant and was admitted into the home by Hudson's wife. Hudson's wife indicated that she knew where the vibrator was located and led the officer to the basement, where the officer found numerous sexual stimulation devices. In a dresser that contained many of the devices, the officer also found videotapes with labels that identified them as pornographic and DVDs with handwritten labels on them. Nearby, the officer observed a computer tower and video camera. Hudson's wife then led the officer upstairs to a computer room, where she indicated that Hudson kept all of his receipts. There, the officer found at least three computers, two of which Hudson's wife said she was not permitted to use. The officer also observed DVDs with handwritten labels indicating that they were pornographic and magazines that depicted naked young adult women, with titles such as "Barely Legal." Hudson's wife also indicated that Hudson owned a digital camera that she was not permitted to use. Based on a detailed recitation of these observations and others, the officer sought a warrant to search for and seize the various sexual stimulation devices, the computers, the video camera, the digital camera, and various other items.

(11) After execution of the second warrant, a member of the New Castle County Police technology crimes division examined the computer that had been located in Hudson's basement and found two videos of the victim in the shower. The videos were a few seconds in length; the victim testified that Hudson recorded

8

the videos and identified his voice in the videos. Hudson contends that his counsel should have sought to suppress the video evidence because, among other arguments, there was no probable cause to seize the electronic equipment or search their contents, and the warrant lacked sufficient particularity because it permitted an overbroad search of the contents of the electronic equipment and did not limit the search to any time period.

(12) Hudson's arguments are unavailing. With respect to the convictions of Sexual Abuse of a Child by a Person in a Position of Trust, Continuous Sexual Abuse of a Child, and Endangering the Welfare of a Child, Hudson cannot demonstrate prejudice from trial counsel's failure to seek to suppress the videos or appellate counsel's failure to assert that position on appeal. The evidence supporting those convictions that is not subject to Hudson's challenges to the search warrant— including the victim's testimony and the physical evidence—was overwhelming, and there is no reasonable basis to conclude that the two short videos affected the outcome on those charges.[18]

(13) With respect to the Violation of Privacy charges,[19] we conclude that Hudson's counsel did not act in an objectively unreasonable manner by not seeking

---

[18] *See Burton v. State*, 2018 WL 6824636, at *2 (Del. Dec. 26, 2018) (rejecting claim that counsel was ineffective for stipulating to drug evidence, because the evidence of the defendant's guilt was overwhelming, and therefore there was no prejudice).

[19] For each of the Violation of Privacy charges, Hudson received a sentence of two years of imprisonment, suspended for two years of probation.

to suppress the shower videos. In his affidavit in response to Hudson's postconviction motion, trial counsel stated that he reviewed both search warrants and believed there was no basis to suppress the seized evidence. That was not a professionally unreasonable conclusion. The affidavit in support of the second search warrant contained facts sufficient to establish probable cause to seize the electronic equipment and to search their contents for video or photographic evidence of Hudson's sexual abuse of his daughter, including facts concerning the victim's interview statements and the officer's observations and Hudson's wife's statements during the execution of the first search warrant.[20] Thus, there was no reasonable basis for counsel to raise a probable cause argument.

(14) As for particularity, the computer forensics officer testified that the shower videos had file names that were consistent with having been assigned by a video recorder[21] and a date of March 10, 2008,[22] which was generally within the time period of the abuse. In *Wheeler v. State*, on which Hudson relies, officers obtained a warrant to search for evidence of witness tampering, which would not have

---

[20] *See Bradley v. State*, 51 A.3d 432 (Del. 2012) (holding that an affidavit of probable cause alleged sufficient facts to support a search of an outbuilding where electronic devices were found, based on the defendant's use of the outbuilding in connection with his medical practice, a parent's observation of the defendant carrying a patient to the outbuilding, and the proximity of the outbuilding to the main practice room). Indeed, Hudson admits that the "search warrant created probable cause to search for two years of evidence of a sexual contact offense." Opening Br. at 18.

[21] Transcript of Trial, Feb. 6, 2012, at 26-29.

[22] The officer testified that he could not determine when the files were created or viewed. *Id.* at 29-43.

involved video or image files, arising from conduct that began no earlier than July 2013, but they found video evidence of child pornography on a computer that had not been powered on since September 2012.[23] In this case, in contrast, a search for video files bearing a date in March 2008 was within the scope of the criminal activity alleged in the affidavit of probable cause.[24] Similarly, unlike in *Buckham v. State*, on which Hudson also relies, in this case there was a sufficient nexus between the computer where the shower videos were ultimately found and the criminal activity that was alleged in the affidavit of probable cause.[25] In the circumstances of this case, we conclude that the search warrant was not impermissibly broad, and counsel therefore was not ineffective for failing to challenge the warrant.

(15) Hudson's next argument on appeal is that his trial counsel provided ineffective assistance when he failed to object to the indictment. Hudson claims that

---

[23] *Wheeler v. State*, 135 A.3d 282, 294-95 (Del. 2016). *See also id.* ("Upon discovering that the iMac had last been turned on in 2012, [the officer] should have terminated his forensic examination of the device since it could not contain information from the relevant time frame.").

[24] *See id.* at 301 ("Some irrelevant files may have to be at least cursorily perused to determine whether they are within the authorized search ambit."). *Cf. United States v. Richards*, 659 F.3d 527, 539-40 (6th Cir. 2011) ("Applying a reasonableness analysis on a case-by-case basis, the federal courts have rejected most particularity challenges to warrants authorizing the seizure and search of entire personal or business computers. . . . [I]n general, so long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files located in the computer's hard drive in order to determine whether they contain such evidence." (internal quotations and alteration omitted)); *State v. Anderson*, 2018 WL 6177176 (Del. Super. Ct. Nov. 5, 2018) (holding that a warrant to search seven cell phones improperly lacked a time period, but that the proper remedy was to suppress evidence from time periods preceding the period of alleged criminal activity, and citing cases).

[25] *Buckham v. State*, 185 A.3d 1, 19 (Del. 2018).

11

the Violation of Privacy counts in the indictment were defective because they did not allege an "essential element" of the offense—namely, that Hudson recorded the shower videos *with the intent of producing sexual gratification*.[26] This argument is unavailing because intent to produce sexual gratification is not an essential element of Violation of Privacy; rather, it is an affirmative defense.[27] Under Superior Court Criminal Rule 7, an indictment "shall be a plain, concise and definite written statement of the essential facts constituting the offense charged" and "shall state for each count the official or customary citation of the statute, rule, regulation or other provision of law which the defendant is alleged therein to have violated."[28] The

---

[26] *See* 11 *Del. C.* § 1335(a) ("A person is guilty of violation of privacy when, except as authorized by law, the person . . . (6) Tape records, photographs, films, videotapes or otherwise reproduces the image of another person who is getting dressed or undressed or has that person's genitals, buttocks or her breasts exposed, without consent, in any place where persons normally disrobe including but not limited to a . . . bathroom, where there is a reasonable expectation of privacy. This paragraph shall not apply to any acts done by a parent or guardian inside of that person's dwelling . . .when a subject of [sic] victim of such acts is intended to be any child of such parent or guardian who has not yet reached that child's eighteenth birthday and whose primary residence is in or upon the dwelling or real property of the parent or guardian, unless the acts done by the parent or guardian are intended to produce sexual gratification for any person in which case this paragraph shall apply . . . .").

[27] *See* 11 *Del. C.* § 305 ("When this Criminal Code or another statute specifically exempts a person or activity from the scope of its application and the defendant contends that the defendant is legally entitled to be exempted thereby, the burden is on the defendant to prove, as an affirmative defense, facts necessary to bring the defendant within the exemption."). *See also* Delaware Criminal Code with Commentary at 63-64, 508 (1973) (stating that there are "a number of sections of the Code which exempt particular persons or activities from liability for particular offenses," "which requires the defendant to prove, as an affirmative defense . . ., the facts necessary to exempt him," and identifying Section 1335(6) as providing an exemption that is treated as an affirmative defense).

[28] DEL. SUPER. CT. R. 7. *See also Asbury*, 2019 WL 4696781, at *3 (rejecting claims of ineffective assistance of counsel based on failure to object to allegedly defective indictment or to request bill of particulars).

12

indictment satisfied this standard, and it was not necessary to allege the absence of an affirmative defense. Because the indictment was not defective, trial counsel was not ineffective for failing to object, nor was Hudson prejudiced by the failure to object.

(16) Hudson also contends that his trial counsel was ineffective for not requesting a bill of particulars. The indictment alleged one act of sexual penetration per month between April 1, 2009 and April 11, 2011. The victim testified at trial that Hudson engaged in sexual penetration a few times per week during that period. Hudson claims that the victim's testimony created surprise at trial, and his counsel should have requested a bill of particulars in order to avoid that surprise and to protect against subsequent prosecution for additional offenses. In his affidavit in response to the motion for postconviction relief, Hudson's trial counsel stated that he had the affidavit of probable cause, police reports, video recordings of the victim's statements to the police, documentation of a statement that the victim made at the hospital, and statements given by Hudson and his wife. Based on that information, counsel believed that he and Hudson were well aware of the allegations against him and the frequency with which the abuse was alleged to have occurred.

(17) The decision whether to grant or deny a defendant's motion for a bill of particulars is within the sound discretion of the trial court.[29] Here, the defense did

---

[29] *Luttrell v. State*, 97 A.3d 70 (Del. 2014).

not request a bill of particulars; rather, Hudson asserts that his counsel was ineffective for failing to do so. In light of the discovery that the State had provided and the discretion that the Superior Court would have had with respect to such a request, we cannot conclude that counsel's performance was deficient or that Hudson was prejudiced. In addition, the indictment clearly put Hudson on notice that the State alleged sexual penetration once per month over a two-year period. In *Dobson v. State*,[30] on which Hudson relies, the juvenile victim reported that the defendant had sexually molested her eight times over the course of a year; the indictment alleged six counts of second-degree rape, with each count worded identically and each covering the same one-year period. Here, in contrast, the indictment specified a different time period for each charge. The indictment therefore sufficiently put Hudson on notice of the charges against him—one act of sexual penetration per month—and Hudson has not shown how a bill of particulars would have helped him achieve a different result at trial. Thus, trial counsel was not ineffective for failing to request a bill of particulars.[31]

(18) Hudson also argues that trial counsel was ineffective because he did not conduct an adequate pretrial investigation, did not interview or subpoena additional fact witnesses, and did not call any defense witnesses or present any other evidence

---

[30] 2013 WL 5918409 (Del. Oct. 31, 2013).
[31] *See Asbury*, 2019 WL 4696781, at *4.

14

after the State rested its case. In this case, trial counsel engaged in vigorous cross-examination of the State's witnesses in an effort to cast doubt where it could—for example, concerning the victim's delayed and limited initial disclosure, the lack of any physical indicators of abuse on the victim's body, and the uncertainty surrounding the date of the shower videos—but the evidence against Hudson was overwhelming, and Hudson has not demonstrated how the presentation of the additional witnesses would have affected the outcome of his trial.[32]

(19) Next, Hudson contends that one of the jurors at trial was potentially biased and should have been removed, and that his trial counsel was ineffective for not objecting to the juror's inclusion on the jury. Hudson did not raise this argument below, and we find no plain error. The basis for Hudson's claim of potential bias is that the juror at issue was a substitute teacher in the school districts where Hudson's wife worked and where the victim attended school. "A defendant seeking a new trial because of a juror's nondisclosure of relevant information requested by the court must show actual prejudice or the existence of circumstances so egregious as to raise a presumption of prejudice to defendant."[33] The Superior Court provided the jury panel with a list of potential witnesses, including Hudson, his wife, and the victim, and asked the potential jurors to identify themselves if they knew any of the potential

---

[32] *Stone*, 690 A.2d at 926.
[33] *McDonald v. State*, 1992 WL 276371, at *1 (Del. Sept. 23, 1992).

15

witnesses. The juror about which Hudson complains came forward for voir dire for an affirmative answer to a different question, but did not indicate that she knew any of the potential witnesses or Hudson. Hudson's claim that the juror might have had some contact with the victim or Hudson's wife is pure speculation; tHudson has not shown a "reasonable probability" that the juror knew anyone involved in the trial or was otherwise not impartial.[34]

(20) Hudson also argues that his trial counsel provided ineffective assistance by failing to present the testimony of the victim's pediatrician or the pediatrician's medical records and by failing to consult with experts to counter evidence presented by the State's sexual assault nurse examiner, DNA expert, and computer forensics expert. With respect to these claims, we affirm on the basis of the Superior Court's September 29, 2017 decision denying postconviction relief.

(21) Hudson contends that his appellate counsel was ineffective for failing to appeal the Superior Court's denial of a motion for a mistrial that Hudson's trial counsel made at the conclusion of the State's case and the court's denial of a motion for judgment of acquittal on the Violation of Privacy charges. With respect to these claims, we affirm on the basis of the Commissioner's April 25, 2018 Report and

---

[34] *See id.* (stating that a defendant must show a "'reasonable probability' that a juror has been biased by outside influences in order to require a new trial or evidentiary hearing," and affirming denial of new trial on drug charges where a witness, the defendant's girlfriend, submitted an affidavit that one of the jurors was an acquaintance of hers and was likely to have heard rumors in the community that the defendant was involved in the drug trade).

16

Recommendation and the Superior Court's July 10, 2018 order adopting the Commissioner's report. Appellate counsel is not required to raise all nonfrivolous claims on appeal.[35] Rather, a defendant can show ineffective assistance of appellate counsel only "where the attorney omits issues that are clearly stronger than those the attorney presented."[36] Here, appellate counsel presented the issue he thought had the most chance of success and gained oral argument on direct appeal. Hudson has not demonstrated ineffective assistance of appellate counsel.

(22) Finally, Hudson asserts that his conviction should be reversed based on cumulative error. He did not present this claim to the Superior Court, and we decline to raise it for the first time on appeal.[37]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED, and the motion for remand with appointment of new counsel is denied.

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

---

[35] *Ploof v. State*, 75 A.3d 811, 831 (Del. 2013).
[36] *Id.* at 832.
[37] Del. Supr. Ct. R. 8.