# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | I.D. # 1903013883 |
| | ) | |
| VINCENT HYLAND, | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: February 5, 2020
Decided: April 9, 2020

**Upon Defendant Vincent Hyland's Motion to Suppress:**
**DENIED**

This 9th day of April, 2020, upon consideration of the Motion to Suppress (the "Motion") filed by Vincent Hyland, the record in this case, and the applicable legal authorities, it appears to the Court that:

**FACTUAL BACKGROUND**

1.     Defendant Vincent Hyland was indicted on charges of Robbery First Degree, Home Invasion, Disguise, Conspiracy Second Degree, Kidnapping First Degree, Possession of a Deadly Weapon During the Commission of a Felony, and two counts of Aggravated Menacing. The charges arise from an alleged home invasion that occurred on March 18, 2019. At approximately 11:00 a.m., New Castle County police responded to a reported home invasion at 139 Chestnut Crossing Drive, Apartment 1 in Newark, Delaware. The victim reported that, as she was

leaving her apartment around 10:00 a.m., two unknown males forced themselves into her residence. The victim stated both men were armed with black handguns and wearing masks or hats, white Tyvek suits, gloves with purple markings, and yellow construction vests. The men bound the victim with black duct tape, pepper sprayed her dog, and at times held a knife to her throat. The men told the victim they knew she had $100,000 cash in her apartment, and they appeared to have knowledge of multiple safes in her residence.

2.     The victim told the men she had only $400. While she was still bound, the victim was able to call 911 on her house phone. The men left the apartment shortly before the police arrived. The men took with them approximately $400 cash and $500 in change, two iPhones, an iPod, an Apple MacBook Air, a cordless phone, a white Michael Kors wallet containing credit cards, a beige Calvin Klein purse, and jewelry.

3.     The victim's cell phone was tracked by police to 605 Cobble Creek Curve in Newark. The police found the victim's cell phone, iPod, and cordless phone in a nearby dumpster. Near the victim's apartment along the fence line, the police found two yellow construction vests, gloves, a black face mask, a white towel, sunglasses, and a blue dog toy. A few days later, police also recovered the victim's other cell phone and laptop, which were found in a dumpster near Glasgow High School. As part of their investigation, police reviewed surveillance footage from

2

multiple locations. That footage showed a tan or gold SUV parked near the victim's apartment at the time of the incident. The SUV proceeded to pick up an individual walking along the fence line where the vests, gloves, and other items were found. Other video footage showed a similar vehicle in the area of 605 Cobble Creek Curve a few minutes after the SUV drove away from the apartment complex.

4. After additional discussions with the victim, police developed Vincent Hyland as a suspect. The victim told police Hyland was in her apartment with her boyfriend the night before the incident, stayed longer than usual, asked several questions about the victim and her boyfriend, and was aware the victim owned two safes. The victim told police Hyland called her boyfriend the afternoon of the incident and that Hyland drove an SUV. Law enforcement databases showed a 2006 GMC Yukon registered in Hyland's name. A traffic citation issued four days before the robbery listed the vehicle as having "bronze" paint. The citation also listed Hyland's address as 17 Alwyn Road in Newark. Two days after the incident, police went to Hyland's address and observed an SUV parked in the driveway that Detective Graham believed matched the vehicle in the surveillance footage.

5. On March 20, 2019, Detective Graham applied for and was granted search warrants for Hyland's 17 Alwyn Road residence and his 2006 GMC Yukon.

In addition to outlining the foregoing facts, the affidavits of probable cause[1] supporting the warrant applications explained that, through his training and experience, Detective Graham knew "individuals involved in violent crimes like [h]ome [i]nvasions[] will often times store or keep items involved in the crime such as clothing, handguns, duct tape, disguises, and stolen items in their residence and/or vehicles."[2]  Graham also averred based on his training and experience that perpetrators of home invasions "will often take away traces of the victim and the scene," including on items used for the commission of the crime.[3]  On March 20, 2019, a magistrate judge from Justice of the Peace Court 2 (the "Magistrate") issued warrants to search Hyland's vehicle and residence (collectively, the "Warrants"). The Warrants were executed the following day.  During the search, police found several items consistent with those used during the home invasion.  Hyland was taken into custody shortly thereafter.

6.     Hyland contends the Warrants for his residence and vehicle lacked sufficient probable cause, and therefore all evidence obtained from the searches must be suppressed.  The State, however, argues the facts contained within the Warrants provide sufficient information to establish probable cause and a nexus between the

---

[1] The affidavit of probable cause for the warrant to search the residence substantively was identical to the affidavit of probable cause for the warrant to search the vehicle.

[2] See State's Resp. to Def.'s Mot. to Suppress (hereinafter "State's Resp."), Ex. A (17 Alwyn Road Search Warrant and Supporting Affidavit) ¶ 25; id., Ex. B (2006 GMC Yukon Search Warrant and Supporting Affidavit) ¶ 26.

[3] Ex. A ¶ 26; Ex. B ¶ 27.

items sought and places to be searched. For the reasons that follow, the Court finds the Magistrate had a substantial basis to conclude that probable cause existed to believe the property to be seized would be found within Hyland's residence or vehicle.

**ANALYSIS**

7. A defendant who challenges the validity of a search warrant bears the burden of establishing by a preponderance of the evidence that the search violated his Constitutional rights.[4] The United States Constitution's Fourth and Fourteenth Amendments guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures[.]"[5] A search warrant only may be issued upon a showing of probable cause,[6] which is determined under a totality of the circumstances.[7] A warrant is valid if its supporting affidavit presents "sufficient facts for a . . . magistrate to form a reasonable belief that an offense has been committed and the property to be seized will be found in a particular place."[8] A reviewing court considers only the information contained in the warrant

---

[4] *State v. Jones*, 2016 WL 10998979, at *3 (Del. Super. June 2, 2016) (citing *State v. Holton*, 2011 WL 4638781, at *2 (Del. Super. Sept. 22, 2011)).
[5] U.S. Const. amend. IV. Article I, § 6 of the Delaware Constitution contains a similar search and seizure provision that, at times, is broader than the protections afforded by the United States Constitution. For purposes of the issues raised in this Motion, the protections are identical.
[6] 11 *Del. C.* §§ 2306-2307.
[7] *Bradley v. State*, 51 A.3d 423, 431 (Del. 2012) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).
[8] *Jones*, 2016 WL 10998979, at *4; *see* 11 *Del. C.* § 2306.

application's four corners and gives great deference to the magistrate's initial finding that there was probable cause to issue the warrant.[9]

8.     Although the warrant application must establish a nexus between the crime and the location to be searched, the nexus "need not be based on direct observation or facts placing evidence at the location to be searched but may be inferred from the factual circumstances[.]"[10] Circumstantial evidence permitting a reasonable inference is sufficient.[11]  In reviewing the challenged Warrants, this Court's analysis focuses on whether the Magistrate reasonably could find that (i) Hyland was involved in the home invasion, and (ii) the stolen goods or evidence of the crime were likely to be found in his residence and vehicle.[12]

9.     The affidavits supporting the Warrants established that Hyland had been developed as a suspect,[13] resided at 17 Alwyn Road,[14] and was the registered owner of a 2006 GMC Yukon.[15]  Surveillance footage showed that a vehicle matching Hyland's SUV was parked in the area of the alleged home invasion,[16] picked up an individual walking along the fence line where items related to the home

---

[9] *Sisson v. State*, 903 A.2d 288, 296 (Del. 2006); *Jones*, 2016 WL 10998979, at *4.
[10] *State v. Aguilar*, 2016 WL 4394617, at *2 (Del. Super. Aug. 15, 2016) (alterations omitted).
[11] *Id.*
[12] *See Jones*, 2016 WL 10998979, at *5.
[13] Ex. A ¶ 16; Ex. B ¶ 16.
[14] Ex. A ¶ 17; Ex. B ¶ 17.
[15] Ex. A ¶ 17; Ex. B ¶ 17.
[16] Ex. A ¶ 13; Ex. B ¶ 13.

invasion were found,[17] and later was driving in the Cobble Creek Curve area where stolen property was recovered.[18] Police observed a vehicle matching that description in Hyland's driveway two days after the incident.[19] Hyland had been pulled over driving the vehicle a couple days before the home invasion. Detective Graham opined that through his training and experience he was aware that persons involved in home invasions often keep the fruits or instruments of the crime in their residences and/or vehicles.[20]

10. Given (i) the specific facts linking the vehicle in question to the home invasion and the stolen property, (ii) the established connection between the vehicle, Hyland, and the residence, and (iii) Detective Graham's experience that robbery perpetrators often store stolen goods and the instrumentalities of the crime in their vehicles and residence, the Warrants presented sufficient facts to allow the Magistrate to form a reasonable belief that there was the necessary nexus between the items sought and Hyland's residence and vehicle.[21]

---

[17] Ex. A ¶ 13; Ex. B ¶ 13.
[18] Ex. A ¶ 14; Ex. B ¶ 14.
[19] Ex. A ¶ 18; Ex. B ¶ 18.
[20] Ex. A ¶ 25; Ex. B ¶ 26.
[21] *See Jones*, 2016 WL 10998979, at *5-6. Hyland additionally argues the Court should consider the temporal and spatial proximity between the alleged home invasion and Detective Graham observing the vehicle he believed to be involved in the home invasion in Hyland's driveway two days later. Hyland cites *State v. Cannon* in support of his contention. *See* 2007 WL 1849022 (Del. Super. June 27, 2007). The facts here are distinguishable from *Cannon* for many reasons, including that *Cannon* was focused on drug and firearm offenses, not a home invasion. Additionally, the facts in the affidavit included the vehicle being located at numerous areas associated with the alleged incident at the time of the home invasion and shortly thereafter, as well

**CONCLUSION**

Therefore, for all the foregoing reasons, Vincent Hyland's Motion to Suppress

is **DENIED.  IT IS SO ORDERED.**


*/s/ Abigail M. LeGrow*

Abigail M. LeGrow, Judge

Original to Prothonotary
cc:    Sean A. Motoyoshi, Deputy Attorney General
       John F. Kirk IV, Esquire

---

as in Hyland's driveway two days after the crime.  Therefore, the temporal and spatial proximity between the crime and Detective Graham's observations was sufficient to support the Warrants.